438

Paul LAXALT, Plaintiff,

v.

C.K. McCLATCHY, Publisher; McClatchy Newspapers, a corporation; Frank McCulloch; Michael Kidder; Dennis Walsh; Art Nauman; George Gruner; Don Slinkard; Sanders LaMont; Ray Nish; Doe Corporations I through XX; Doe Partnerships I through XX; Doe Associations I through XX; and Does I through XX, Defendants.

No. CV–R–84–407–ECR.

United States District Court,
D. Nevada.

Feb. 12, 1987.

Opinion on Motion to Disclose Confidential Sources April 3, 1987.

Opinion on Motion to Compel Answers May 6, 1987.

See also, D.C., 109 F.R.D. 632, D.C., 116 F.R.D. 455.

Richard L. Davenport, Reno, Nev., and James E. Beasley, Philadelphia, Pa., for plaintiff.

Gibson, Dunn & Crutcher, Los Angeles, Cal., for all defendants except Walsh.

Thomas E. Kotoske, Palo Alto, Cal., for defendant Walsh.

Brent T. Adams, Reno, Nev., Associate counsel, for all defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

This matter comes to the Court by way of two discovery orders, docket nos. 507 and 516, from the United States Magistrate. The heart and soul of this lawsuit is the plaintiff's libel action against the defendants, regarding a series of articles printed in the defendants' newspapers which allegedly connected the plaintiff's hotel-casino with organized crime during the time of plaintiff's ownership. The present matter, however, concerns only two depositions taken in San Francisco, at which time defendants' counsel instructed witnesses not to answer certain questions on the basis of the work product privilege.

The deponents at these depositions were Joseph Yablonsky and Rayole Charyn. Yablonsky had been the head of the Federal Bureau of Investigation in Nevada prior to his retirement in 1983. After that time, the defendants retained Yablonsky as an investigator for the purposes of developing information for this lawsuit. Ms. Charyn had previously been a staff member for the Gaming Control Board for the State of Nevada. Subsequent to that employment, she became associated with the private investigating firm of Nielson and Green. During her employment there, she had the occasion to prepare a report for Dennis Walsh, one of the defendants in this action, regarding the plaintiff's alleged connections with organized crime. Walsh apparently used that report in preparing the allegedly defamatory article for publication in the McClatchy newspapers. After suit was filed, the defendants retained the firm of Nielson and Green to assist them in trial preparation, and Ms. Charyn has taken an active role in that firm's assistance of the defendants in the preparation of this case.

As far as Ms. Charyn is concerned, it is clear that she must have information which

she gathered well before being retained as an investigator by the defendants. This presents the problem of ferreting out the information which she discovered as a fact witness from the information which she developed as an agent of the defendants. The plaintiff claims that Mr. Yablonsky is also a witness wearing two hats, in that he reputedly had developed a substantial amount of information about the plaintiff's alleged connections with organized crime during his employ with the F.B.I. in Nevada. By virtue of this, the plaintiff also claims that Yablonsky holds factual information regarding this suit which was not developed in anticipation of trial.

At the San Francisco depositions, the plaintiff attempted to question the deponents regarding information which they obtained before their employment by defendants. In addition, the plaintiff inquired about the identities of witnesses which each had interviewed, and the facts they had uncovered during the course of their investigations for the defendants. Further, the plaintiff sought to discover whether the deponents had seen certain documents, either during their employment with the defendants, or before that time.

The defendants' counsel objected to all of these questions generally, arguing that any information which the deponents obtained during the course of their employment with the defendants was privileged under the doctrine of work product. The defendants' counsel did allow the deponents to respond to the questions to the extent that any information requested by the plaintiff may have been acquired before their employment, but counsel appear to have drawn an absolute line at the time of employment by the defendants. The plaintiff objected to the use of the work product doctrine in this fashion, contending generally that the defendants' claim of privilege was too broad, and that some of the information sought fell clearly outside of the privilege.

In her discovery orders, the United States Magistrate found that Mr. Yablonsky must answer the plaintiff's questions regarding the identity of witnesses who may have been sources for the Walsh articles, that he must identify any witness to any fact pertinent to this suit, and that he must reveal all information concerning facts at issue in this suit. The Magistrate further ordered this deponent to answer questions regarding the fee arrangement with the defendants, save that he need not answer questions regarding specific travel expenses or billings presented to plaintiff's counsel. The deponent was further ordered to answer questions regarding the identity and general content of all files and documents pertinent to the case, and his knowledge of any documents which have already appeared in the case. The order also required Yablonsky to appear at a later deposition, and bring with him all files and materials relevant to this case.

The Magistrate also ordered deponent Charyn to answer all questions pertaining to the possibility that the defendants may have offered anything of value to fact witnesses in the litigation. The deponent was further instructed to answer all questions regarding the identity of witnesses with knowledge of facts pertinent to this suit, regarding her personal knowledge of the facts at issue in this action, about her knowledge of the location and content of any files or documents pertinent to the case, and regarding her personal knowledge of any documents which have already appeared in discovery.

■ The defendants have objected to the Magistrate's orders on various grounds, and the plaintiff has responded to those objections. In general, however, it is clear that this Court reviews discovery matters that have been referred to the Magistrate only on a clearly erroneous or contrary to law standard. *See Rockwell International, Inc. v. Pos-A Traction Industries, Inc.,* 712 F.2d 1324, 1325 (9th Cir.1983); 28 U.S.C. § 636(b)(1)(A). This standard is very generous, and the defendants must provide a strong showing that the Magistrate's ruling was in error for this Court to reverse it. *Id.*

## THE WORK PRODUCT PRIVILEGE

As the Magistrate noted in her orders, the current work product privilege had its genesis in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In that case the Court recognized that attempts "to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties ..." were highly improper and prejudicial. *Id.*, at 510, 67 S.Ct. at 393. The Court thus erected a rule that prevented opposing counsel from forging its way into a party's trial strategy. *Id.; Note, Discovery of the Non-testifying Expert Witness' Identity Under the Federal Rules of Civil Procedure*, 37 Hastings L.J. 201, 205 n. 25 (1985).

In the wake of the *Hickman* case, Fed.R. Civ.P. 26(b)(3) was enacted. *Id.* In pertinent part, this rule provides that

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party by or for that other party's representative ... only upon a showing of that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation....

Fed.R.Civ.P. 26(b)(3).

From the face of the rule, it thus appears that three criteria must be satisfied before materials are shrouded with the work product privilege. First, the materials must be "documents or tangible things." Second, they must be "prepared in anticipation of litigation or for trial." Finally, these items must be prepared "by or for another party or by or for that other party's representa-

tive." *Id., see also Augenti v. Cappellini*, 84 F.R.D. 73, 79 (M.D.Pa.1979) (*citing C. Wright & A. Miller, Federal Practice and Procedure* § 2021–27 (1970)). Once these initial criteria are satisfied, the discovering party must show a substantial need for the materials in the preparation of his case, and that he is unable to acquire their substantial equivalent from other sources without undue hardship. Fed.R.Civ.P. 26(b)(3); *see also Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 33 (D.Md.1974). If no such showing is made, the materials remain privileged, and non-discoverable. *Id.*

## INTANGIBLE WORK PRODUCT

In her discovery orders, the Magistrate intimated that only tangible items, such as reports and memoranda, could be protected by the privilege. As noted above, the face of the rule does seem to limit the privilege to tangible things. The defendants object to this finding, however, and argue that intangibles, such as opinions and the like, must also be protected by the privilege.

■ It appears that the privilege created under Rule 26(b)(3) covers intangible material as well as tangible things. Initially, the rule itself indicates that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3). Whereas such opinions and theories could be in a written, tangible form, it is equally possible that they could reside simply in the intangible thoughts of a party's counsel. Opposing counsel cannot be allowed to gain access to "opinion work product" simply because of the fact that they have not been reduced to a tangible form. *See Phoenix National Corp. v. Bowater United Kingdom Paper*, 98 F.R.D. 669, 671 (N.D.Ga. 1983); *Ford v. Philips Electronics Instruments Co.*, 82 F.R.D. 359, 360 (E.D.Pa. 1979). Indeed, it appears that such opinion work product enjoys an almost absolute immunity from discovery. *See Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981); *In re*

*Sealed Case*, 676 F.2d 793, 809–10 (D.C.Cir. 1982). Therefore, not even a showing of substantial need, lack of substantial equivalent, and undue hardship can force the disclosure of these materials. *Id.* It is not the fact that the information sought by the plaintiff is largely intangible which requires disclosure, however.

## INFORMATION OBTAINED BY INVESTIGATORS

The defendants also object to the Magistrate's orders in that they require the deponents to divulge facts and knowledge which they have gained solely in their capacity as defendants' investigators. There is no dispute among the parties that the plaintiff may properly discover the facts and knowledge which the deponents garnered before employment by the defendants, in that the work product privilege protects only that which is prepared in anticipation of trial. Fed.R.Civ.P. 26(b)(3). The defendants further argue, however, that all information which the deponents uncovered in the course of their employment is shielded from discovery in that it was prepared in anticipation of trial. If the rule were otherwise, conclude the defendants, the opposition could simply depose the party's investigator, at relatively little expense, and get the whole factual picture at a bargain price. Defendants maintain that this interpretation of the rule works a manifest injustice, in that it rewards a less diligent party at the expense of the opposition.

Relevant case law, however, indicates that this section of the rule has been interpreted to require a party's investigators to reveal all factual information which they have uncovered as a result of their investigations. In *Eoppolo v. National Railroad Passenger Corp.*, 108 F.R.D. 292 (E.D.Pa. 1985), for example, an employee sought damages due to injuries sustained during his employment with Amtrak, and filed a motion to compel answers to certain interrogatories which he had propounded. The defendants objected to these interrogatories on the grounds that they requested information which the defendants had prepared in anticipation of litigation. By virtue of Rule 26(b)(3), contended the defendants, they could not be required to divulge information and facts which they had secured only as a result of their pretrial investigations. *Id.*, at 294. The plaintiff argued in opposition that Rule 26(b)(3) speaks only to the production of documents, and that factual information could not be shielded from discovery under the rubric of the work product privilege. *Id.*

The court concurred with the plaintiff. "Generally," it noted, "one party may discover relevant facts known or available to the other party, even though such facts are contained in a document which is not itself discoverable." *Id.*, (*citing* Fed.R.Civ.P. 26(b)(3) advisory committee note). The work product rule, the court continued, was adopted to shield the mental impressions and legal theories of a party's counsel or other representative. Work product immunity does not protect the facts which an adverse party may have learned or the persons from whom such facts were garnered, the court concluded. *Id.* In view of this analysis, the defendants were then compelled to answer the plaintiff's interrogatories, by revealing the underlying facts of the accident which had been uncovered through their pretrial investigation. The court emphasized, however, that the defendants would not be required to divulge counsel's view of the case, which facts counsel considered significant, or what specific questions were asked of witnesses by the defendant's investigators. Such information, the court noted, would fall under the category of mental impression, which is protected by the rule. *Id.*, (*citing Ford v. Phillips Electronics, supra*, at 361).

In the present case, both deponents must answer questions which seek to discover all relevant facts in the case, regardless of whether those facts were discovered in their roles as defendants' investigators, or before those employment relationships were created. *Id.*, *see also Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 595 (3rd

Cir.1984) (adversary is entitled to full discovery of facts, and documents containing both facts and legal conclusions must be produced in a redacted form); *Mervin v. Federal Trade Commission*, 591 F.2d 821, 825 (D.C.Cir.1978) (government attorney cannot protect verbatim witness statement merely by including its text in a memorandum prepared for litigation); *In re Alexander Grant & Co. Litigation,* 110 F.R.D. 545, 548 (S.D.Fla.1986) (work product privilege does not apply to underlying facts which can be explored during a deposition); *In re Dayco Corp. Derivative Securities Litigation,* 99 F.R.D. 616, 624 (S.D.Ohio 1983) (facts upon which allegations are based are discoverable without work product protections); *Xerox Corp. v. International Business Machines Corp.,* 64 F.R.D. 367, 381 (S.D.N.Y.1974) (nonprivileged facts could not be hidden from discovery); *Clevite Corp. v. Beckman Instruments, Inc.,* 257 F.Supp. 50, 52 (S.D.Cal. 1966) (factual information derived from plaintiff's patent searches was not privileged, even if the actual search documents were); *cf., Joyner v. Continental Insurance Cos.,* 101 F.R.D. 414, 417 (S.D.Ga. 1983) (court ordered *in camera* production of documents in order to remove protected mental impressions from unprotected facts).

The Court is mindful, however, that there is a possibility that a discussion of factual matters may reveal counsel's tactical or strategic thoughts. *See Powell v. United States Dept. of Justice,* 584 F.Supp. 1508, 1520 (N.D.Cal.1984). This appears to have been at least part of the impetus behind defendants' objections at deposition, in that the plaintiff's questions to the deponents asked them simply to recall all of the relevant facts in the litigation. Such broad based questions seem inappropriate, in that they basically require the deponent to divulge what he does and does not know. This sort of answer could easily lead to the disclosure of mental impressions or strategy, in that a picture of the opposition's trial strategy could be intuited from knowledge of what the opponent's investigators know or do not know.

In view of this, plaintiff should more carefully tailor his questions in the deposition, so as to elicit specific factual material, and avoid broad based inquiries, such as those in the previous depositions, which could lead to the disclosure of trial strategies. *Id.*

## IDENTITY OF WITNESSES INTERVIEWED

■ The defendants further protest the Magistrate's discovery orders, as far as they require them to divulge which witnesses the deponents have interviewed in the course of their investigations. As the preceding discussion has demonstrated, whether a certain person has factual knowledge relevant to the lawsuit is not protected by the work product privilege. *Board of Education v. Admiral Heating,* 104 F.R.D. 23, 32 (N.D.Ill.1984) (party may inquire into identity and location of persons having relevant knowledge but not in such a fashion that discloses trial strategy). The privilege does prevent opposing counsel, however, from inquiring whether the investigator has interviewed that particular person in the course of his investigation. If this information were disclosed, the opposition would be able to formulate a list of which witnesses counsel considered important and which were not. This sort of information is the type of mental impression and trial strategy which the work product rule was meant to protect. *Id.* The deponents in this case may thus be compelled to disclose the identity and whereabouts of the persons having relevant knowledge, but they may not be forced to disclose which of these individuals they have in fact interviewed. *Id.*

## KNOWLEDGE OF DOCUMENTS

■ The defendants further object to the Magistrate's orders insofar as they require the deponents to answer questions regarding their knowledge concerning documents which have already appeared in the litigation. The answers to these questions, contend the defendants, would also likely reveal important trial strategy, in that plaintiff would then know which of the thou-

sands of documents in this case the defendants considered important. The defendants objections seem well taken. In *Sporck v. Peil,* 759 F.2d 312 (3rd Cir.1985), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985), for example, the plaintiff sought to discover which documents were given to a particular defendant by his counsel to review before a deposition. The district court had ordered that these documents be produced in accordance with the plaintiff's request, finding that the grouping and selection of documents was not opinion work product, which is entitled to absolute protection, and that Fed.R.Evid. 612 supported the need for discovery. *Id.,* at 314. The defendants argued that the grouping and selection of documents represented counsel's mental impressions and legal opinions as to how the evidence in the documents related to the issues and defenses in the case. *Id.,* at 315. In that revealing the selection of the documents would also reveal counsel's trial strategy, the defendants contended that this information was protected by the work product doctrine. *Id.*

The Third Circuit agreed with the defendants. It noted that opinion work product, which includes legal strategy, intended lines of proof, evaluation of the case's strengths and weaknesses, and inferences drawn from witnesses, receives an almost absolute protection from discovery under the federal rules. *Id.,* at 316, (*citing Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). The selection and compilation of documents, the court continued, comes within this category of highly protected information, in that "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case such as this, the process of selection and distillation is often more critical than pure legal research." *Id., citing James Julian Inc. v. Raytheon, Co.,* 93 F.R.D. 138, 144 (D.Del.1982); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 74 F.R.D. 613, 616 (S.D.N.Y.1977) (notebooks representing counsel's ordering of facts were protected work product). By selecting out and ordering these documents from the thousands of others in the litigation, the court concluded, counsel had set his imprimatur on them, which would give away significant amounts of privileged information if released. *Id.*

In the present case, the Magistrate has ordered the deponents to respond to questions which seek to probe their knowledge of documents which have already appeared in the case. To the extent that these questions seek to discover which documents the defendants have shown to the deponents, and what they have told deponents about the documents, they are improper. By revealing the fact that the deponents' knowledge of a certain document exists only in that they were shown the document by defendants' counsel, significant trial strategy could be revealed as in *Sporck, supra.* Therefore, the deponents can be compelled to state whether they know if a certain document exists, what factual information it contains and to disclose its location. In addition, they can be forced to disclose all knowledge regarding any document which they gathered before becoming the defendants' investigators in this case. After that point, however, forcing the deponents to reveal their "knowledge" of documents seems geared to the release of protected work product and will not be allowed. *Id.*

## DISCOVERY OF INVESTIGATOR'S FILES

The defendants also object to the Magistrate's order regarding deponent Yablonsky on the grounds that it appears to require him to turn over his investigative files to the plaintiff. If such were the Magistrate's order, it would clearly be improper. A closer reading of that order, however, indicates that Magistrate has merely commanded Yablonsky to bring with him all files and materials in his possession which are responsive to the original subpoena. The order then clearly states that the deponent may keep these materials in his possession unless the deposition shows them to be discoverable. In other words, if, during the course of the deposi-

tion it is concluded that a document in the deponent's possession is discoverable and not shielded by work product immunity (such as a document Yablonsky prepared before being hired by the defendants, or one containing a pure recital of facts) the plaintiff would be able to examine it at the deposition. This order is consistent with both the spirit and letter of Rule 26(b)(3), and the deponent shall obey it.

## QUESTIONS REGARDING WITNESS FEES

■ The defendants' final objection to the Magistrate's orders is that they require the deponents to divulge whether they have offered anything of value to fact witnesses in this litigation. Defendants' objections to this order are that no proof has been offered to establish that such offers were indeed made, and if such offers did occur, the defendants are not required to reveal the identity of prospective, nontestifying expert witnesses. The defendants' objections are without foundation.

Initially, the scope of discovery under Fed.R.Civ.P. 26(b)(1) is extremely broad, and encompasses all relevant material. "Relevance" is defined by the rule as all material that is reasonably calculated to lead to admissible evidence. Fed.R.Civ.P. 26(b)(1). Therefore, the fact that no offer of proof has been made to establish that offers were made to fact witnesses is immaterial, in that the discovery process itself is the vehicle for learning whether such acts did occur.

In addition, the Magistrate's order indicates only that the deponents must reveal whether anything of value was ever offered to a fact witness. The order mentions nowhere that the defendants must respond in regard to any possible experts it has retained. If the plaintiff does later seek to discover such information, the defendants may move for an appropriate protective order under Fed.R.Civ.P. 26(c). As currently constituted, however, the order is correct and the deponents must respond appropriately.

IT IS, THEREFORE, HEREBY ORDERED that the orders, docket # 507, entered November 18, 1986, and docket # 516, entered December 4, 1986, of the United States Magistrate are modified, consistent with the rulings of this Court.

IT IS FURTHER ORDERED that the deponents shall answer all questions which seek to discover relevant facts in this case, regardless of whether those facts were discovered in their roles as defendants' investigators or before those employment relationships were created. The plaintiff is directed to tailor his questions carefully, so as to elicit specific factual material, and thereby avoid inquiries which could lead to disclosure of protected work product.

IT IS FURTHER ORDERED that the deponents must respond to questions regarding their knowledge of documents only with the existence, location, and identity of such papers. The deponents shall not be required to respond to any such questions in a manner which reveals their individual knowledge of documents which was generated in their capacity as defendants' trial investigators.

IT IS FURTHER ORDERED that deponent Yablonsky shall be required to bring his files and materials with him to deposition, as required by the Magistrate's order. He shall not be required to divulge any protected work product, as that order has already indicated.

IT IS FURTHER ORDERED that deponent Charyn shall answer questions regarding any fees offered to prospective fact witnesses, as required by the Magistrate's order. Defendants may move at a later time for protective order under Fed.R.Civ.P. 26(c), if appropriate.

## ON MOTION TO DISCLOSE CONFIDENTIAL SOURCES

The Court has received the Magistrate's order regarding the plaintiff's motion to compel discovery in this case. In addition, the Court has received and reviewed the defendants' objections to that order as well as the plaintiff's response. The basic facts of this case are well known, and will not be restated at length here. Suffice it to say

for present purposes that the plaintiff, former Senator Paul Laxalt, has filed suit against the defendants, alleging that various articles printed in the Sacramento Bee, the Fresno Bee, and the Modesto Bee defamed him. These articles apparently implied that organized crime figures had organized a skim operation in the plaintiff's hotel casino during the time of his ownership.

The present motion is to compel the disclosure of confidential sources employed by defendant Walsh in the preparation of his articles. Walsh refused to answer questions at his deposition regarding the identity of these sources, claiming both the first amendment shield and the Nevada and California newspaper reporter's privilege. In her order, the Magistrate found that Nevada conflicts rules would lead to the application of California privilege law. Under the California rules, she then concluded that the confidential sources in this case were not privileged, and that the defendants would have to disclose them.

The Court notes that this matter presents some of the most difficult legal questions which federal courts are required to resolve. The Magistrate's order is an exhaustive analysis of the relevant authorities, and is not without persuasive effect on the Court. On balance, however, it appears that Nevada substantive law governs this issue.[1] First, the Nevada conflicts rule appears to be the more traditional, vested rights approach of the *Restatement (First) of Conflicts* (1934) (First Restatement), rather than the significant relationship approach of the *Restatement (Second) of Conflicts* (1971) (Second Restatement). Application of this rule leads to Nevada substantive law of privilege. In addition, even if the Second Restatement approach were to be followed, it appears that the

state with the most significant relationship to this cause of action is Nevada, and that Nevada law should therefore apply. Moreover, under § 139 of the Second Restatement, the parties must prove which state has the most significant relationship with the communication. In that the parties have failed to show which state has such relation, the Court must fall back onto forum law. Application of any of these rules, therefore, leads to Nevada substantive law.

## CONFLICT OF LAWS IN FEDERAL COURTS

■ The Federal Rules of Evidence provide that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law." Fed.R.Evid. 501. Because the libel suit is a state law cause of action, all of its elements must be construed in accordance with state law. In addition, because the reporter's privileges are also matters of state law, they must be construed in accordance with state rules. Rule 501 thus reaches the same result as would be by application of *Erie* principles. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In construing the reporter's privilege in this case, therefore, the Court must look to the whole law of the state of Nevada, including the state's conflict of law rule. *Klaxon v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

The Magistrate, relying primarily on *Hanley v. Tribune Publishing Co.,* 527 F.2d 68 (9th Cir.1975), held in her order that a Nevada state court would apply the most significant relationship test of the

---

1. Under 28 U.S.C. 636(b)(1)(B), it appears that this Court's review of the Magistrate's order must be under the clearly erroneous or contrary to law standard. *See also* LR 510–1 (standard of review of Magistrate's order is clearly erroneous or contrary to law when Magistrate has authority to determine matter finally). As the defendants correctly point out, questions of law decided by a Magistrate are always subject to *de*

novo review. An incorrect legal determination is "contrary to law," and must be corrected. *See National R.R. Passenger Corp. v. Koch Industries,* 701 F.2d 108, 110 (10th Cir.1983); *Fogel v. Chestnutt,* 668 F.2d 100, 116–17 (2nd Cir), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). In that the issues in this case are all questions of law, the review here is, in essence, *de novo.*

Second Restatement in deciding a conflicts of law question in a libel case. In that she found the Second Restatement to be the applicable conflicts rule, the Magistrate then analyzed the relevant relationships in this case, and found that California, not Nevada, had the more compelling contacts with these confidential communications. Because California had the stronger contacts, the Magistrate applied the California law regarding reporter's privileges, and found that this information was not shielded. Defendant Walsh was thus ordered to disclose his confidential sources, or face sanctions from the Court.

## NEVADA CONFLICT RULES

It appears that the applicable conflict rule in the Nevada state courts is not the Second Restatement's significant relationship test, but rather the First Restatement's vested rights theory (also known as the *lex loci* rule). The Ninth Circuit has, of course, indicated that the Second Restatement does apply in Nevada. *Hanley v. Tribune Publishing Co., supra*, pg. 446, at 69. If this opinion had actually decided the conflict question in Nevada, this Court would naturally be bound by that precedent.

In the *Hanley* case, however, the question of which conflict rule Nevada would apply was never before the court, either at the district level or on appeal. *Southern Pacific Transportation Co. v. United States*, 462 F.Supp. 1227, 1232 (E.D.Cal. 1978). The *Hanley* appellate briefs in particular lead to the conclusion that the parties in that case had assumed that the Nevada rule was that of the Second Restatement. *Id.* Rather than arguing about which conflicts rule was applicable in Nevada, the parties and the court focused their attention on the interpretation of the Second Restatement rule. There is no indication that

> the preliminary question of the applicable Nevada choice of law rule was ever presented to or considered by the district court or the Ninth Circuit in *Hanley*. Every indication is that both courts assumed for reasons not stated or discerna-

ble that Nevada's rule was found in the [Second] Restatement and directed their attention to the interpretation of the Restatement factors.

*Id.*, at 1233. Because the initial question of the identity of the Nevada conflict rule was never brought to the attention of the court nor ruled upon, *Hanley* has little precedential value on the topic. *See Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) (questions which lurk in the record, neither brought to the court's attention nor ruled upon, cannot be considered as having been decided as to constitute precedent); *see also United States v. Mitchell*, 271 U.S. 9, 12, 46 S.Ct. 418, 419, 70 L.Ed. 799 (1926); *Sethy v. Alameda County Water District*, 545 F.2d 1157, 1160 (9th Cir.1976); *Mead v. Retail Clerks Int'l Ass'n*, 523 F.2d 1371, 1374 (9th Cir. 1975). The Court must thus turn to Nevada precedent to determine the applicable Nevada conflicts rule.

 It appears, at least as far as tort actions are concerned, that Nevada follows the vested rights approach of the First Restatement in choice of law matters. Certainly this was the rule several years ago. *See Lightenburger v. Gordon*, 81 Nev. 553, 407 P.2d 728, 736 (1965); *Karlsen v. Jack*, 80 Nev. 201, 391 P.2d 319, 320 (1964); *Campbell v. Baskin*, 69 Nev. 108, 242 P.2d 290, 294 (1952); *Mitrovich v. Pavlovich*, 61 Nev. 62, 114 P.2d 1084, 1086 (1941). In *Tab Construction Co. v. Eighth Judicial District*, 83 Nev. 364, 432 P.2d 90 (1967) the previously clear dictates of the state supreme court were muddied to a degree. In that case, a Nevada corporation hired an Arizona subcontractor to work on a project in Nevada. An Arizona employee of the subcontractor was injured on the job and sued Tab Construction for negligence. Tab carried Nevada Industrial Insurance, which compensates workers for injuries incurred on the job, but prohibits common law recoveries, as the rights and remedies under the Act are exclusive. *Id.* at 365, 432 P.2d at 91.

After plaintiff sued, Tab filed a petition for a writ of prohibition in the supreme court to prevent the trial court from pro-

ceeding with the action, on the basis that the statutory scheme provided the plaintiff's exclusive remedy. The plaintiff argued that the action should be allowed, because Arizona law controlled the case, and Arizona's worker's compensation statute allowed common law actions.

The state supreme court found that Nevada law controlled the question. The court first observed that Nevada had a legitimate constitutional interest in the application of its own domestic law to worker's injuries within its borders. *Id.* Nevada's interest in the case did not derive solely from the fact that the injury occurred in the state, the court continued. That Nevada was the forum for the action was highly significant, the court found, for if the forum is concerned, it must not favor a policy of a sister state which is repugnant to its own. *Id.* Therefore, unless there are significant nonforum contacts, the court found that Nevada law should apply. Because the forum contacts in this case heavily outweighed the nonforum contacts, the court found there was no compelling reason why Nevada's policy of limiting such suits should be abandoned. The writ of prohibition thus issued, preventing the suit from going forward. *Id.*, 366–67, 432 P.2d at 92.

This case can be interpreted in a variety of ways. Initially, one might find that its language represents a rejection of the vested rights approach of the First Restatement in favor of either the significant contacts doctrine of the Second Restatement or the governmental interest theories of Professor Currie. *Gronberg and Mundell, Choice of Law in Nevada: an Overview, Inter Alia,* February/March, 1982 at F4. Alternatively, the case might be seen as the adoption of one of the modern approaches to worker's compensation without rejection of the First Restatement for other conflicts areas. *Id.* Most compelling, however, is the argument that the case represents adherence to the vested rights theory, coupled with a constitutional analysis to show that Nevada could apply its own law in this situation without running afoul of the full faith and credit clause of the Con-

stitution. *Id.; see also Southern Pacific Transport Co., supra,* pg. 447, at 1240.

The cases cited by the court in its opinion support the third construction of *Tab.* In *Carroll v. Lanza,* 349 U.S. 408, 412, 75 S.Ct. 804, 806, 99 L.Ed. 1183 (1955), *Pacific Employers Ins. Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 502, 59 S.Ct. 629, 633, 83 L.Ed. 940 (1939); and *Alaska Packers Ass'n v. Industrial Accident Comm'n,* 294 U.S. 532, 541, 55 S.Ct. 518, 521, 79 L.Ed. 1044 (1935), the United States Supreme Court held that a forum state may apply its own worker's compensation statutes without constitutional implications if the accident occurred in that state, or if it was the state in which the employment contract was made. *See Carroll v. Lanza, supra.* The *Tab* court's reliance on these cases indicates that it was merely establishing that Nevada could properly apply its own law in a worker's compensation context.

In addition, the *Tab* court nowhere overruled the previous line of Nevada cases that had firmly established the vested rights theories in Nevada. These older cases therefore retain their precedential effect. Most of all, the *Tab* court did not expressly adopt the Second Restatement approach in tort cases. Other courts which have abandoned the First Restatement for the more modern approach have done so with much fanfare, discussing the advantages of the modern approaches, and selecting the theory which seems most suitable to that state. *See Southern Pacific Transportation Co., supra,* pg. 447, at 1245. The *Tab* case did not mention the vested rights theories, either with approval or otherwise. Neither did the court weigh the advantages of the adoption of the Second Restatement with respect to the rejection of the First Restatement. *Id.* In view of this, *Tab* cannot be read as a rejection of the traditional approach in favor of the Second Restatement in tort cases.

Later Nevada cases have adopted the Second Restatement in contracts cases. *See Engel v. Ernst,* 102 Nev.Adv.Op. 90,

724 P.2d 215 (1986); *Costanzo v. Marine Midland Realty Credit Corp.*, 101 Nev. 277, 701 P.2d 747 (1985); *Sievers v. Diversified Mortgage Investors*, 95 Nev. 811, 603 P.2d 270 (1979). These cases are not highly persuasive in the present matter for several reasons. Initially, they deal exclusively with contracts, not torts. In that the policy considerations for choice of law rules differ among the various legal doctrine involved, contracts cases are of little precedential value here. *Compare Restatement (Second) of Conflicts*, §§ 188–197 *with* § 146–155 (1971). In addition, none of these contracts cases discusses the vested rights theories of the First Restatement, nor does any of the cases overrule the previous Nevada vested rights torts cases. As with *Tab*, these cases do not lessen the strength of the previous Nevada First Restatement cases.

Moreover, all of these cases involved the interpretation of choice of law clauses found in the contracts themselves. The Second Restatement indicates that such clauses will normally be given effect if there is a reasonable relation with the place of performance. *Restatement (Second) of Conflicts*, § 187(2) (1971). At issue in these cases, then, was the interpretation of the parties' agreement in light of § 187(2). In torts cases, of course, there is no agreement between the parties which selects one forum's law over another. The construction of contracts thus has little relevance in a case such as this, and this line of cases has little persuasive authority in the present situation.

Although the line of authority is not crystal clear, it nonetheless seems certain that the vested rights theories of the First Restatement still apply in Nevada with respect to torts cases. These theories are somewhat antiquated, and have been justly criticized. The task of this Court, however "is to ascertain what the state law is, not what it ought to be." *Klaxon Co. v. Stentor Electric Mfg. Co.*, *supra*, pg. 446, 313 U.S. at 497, 61 S.Ct. at 1022; *see also Romero v. Ten Eyck-Shaw, Inc.*, 400 F.2d 81, 82 (9th Cir.1968), *cert. denied*, 393 U.S. 1021, 89 S.Ct. 629, 21 L.Ed.2d 566 (1969).

It appears to this Court that the line of cases establishing the First Restatement in Nevada has not been overruled, and that the traditional rule thus still applies in Nevada in torts cases. *Tweet v. Webster*, 610 F.Supp. 104, 105 (D.Nev.1985); *Cambridge Filter Co. v. International Filter Co., Inc.*, 548 F.Supp. 1301, 1305 (D.Nev.1982); *Southern Pacific Transport Co. v. United States, supra,* pg. 447, at 1245.

FIRST RESTATEMENT

▆ Under the First Restatement, the law of the place of the wrong controls all substantive issues in the lawsuit. *See Karlsen v. Jack, supra,* pg. 447, 391 P.2d at 320; *Restatement (First) of Conflicts,* § 377 (1934). The "place of wrong" is recognized as the place where the injury is incurred. *Restatement, supra,* § 377 comment a, illustrations 1 & 2 (1934); *see also Restatement (First) of Torts,* § 7 (1934). Although the allegedly libelous articles were printed in a California newspaper, and were distributed primarily in California, the place of the plaintiff's injury is Nevada. *Laxalt v. McClatchy,* 622 F.Supp. 737, 744 (D.Nev.1985). As the Court has previously noted, this is the plaintiff's domicile, and is the state which elected him to the United States Senate. The greatest injury to the plaintiff's reputation, at the time of publication would have therefore been centered in this state. *Id.* The place of injury in this case was thus Nevada, and Nevada law controls the privilege issue under the First Restatement.

SECOND RESTATEMENT § 150

Even if Nevada did follow the Second Restatement, it appears that Nevada substantive law would still properly apply. Under Second Restatement § 150, the rights and liabilities that arise from the publication of a libel shall be determined by the law of the state having the most significant relationship to the occurrence and the parties in the case. *Restatement (Second) of Conflicts,* § 150(1) (1971). This section then indicates that the state of the most significant relationship will be the state in

which the plaintiff was domiciled at the time, if the matter was published in that state. *Id.*, subsection (2) & comment (e).

Application of this section of the Second Restatement would unavoidably lead to Nevada law. As noted above, the plaintiff in this case was domiciled in Nevada at the time of the alleged libel. *See Laxalt v. McClatchy, supra*, pg. 449. Furthermore, the newspapers containing the alleged libel were published in this state, as they were distributed here. Although one might argue that the "publication" of these newspapers took place only in California, their place of printing, the Restatement uses the term in the defamation sense. Thus, "publication" here means distribution of the allegedly defamatory statement. Under this section of the Second Restatement, it is clear that Nevada law would apply to the reporter's privilege issue. *See Newton v. NBC*, 109 F.R.D. 522, 529 (D.Nev.1985).

SECOND RESTATEMENT § 139

In her order, however, the Magistrate found that § 139 of the Second Restatement applied. This section provides that

[e]vidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.

*Restatement (Second) of Conflicts*, § 139(1) (1971). Under this section, it is the forum with the most significant relationship to the communication, rather than the injury, which controls the choice of law. This state will normally be that in which the communication took place: where an oral interchange took place; where a written statement was received; or where an inspection was made of a person or thing. If a prior relationship exists before the communication occurs, the state in which the relationship is centered will control unless the state in which the communication took place has substantial contacts with the parties to the transaction. *Id.*, comment (e). *See also Samuelson v. Susen*, 576

F.2d 546, 552 (3rd Cir.1978) (court found that state in which the individuals resided, and where communications actually took place would control privilege issue); *Renfield Corp. v. E. Remy Martin & Co., S.A.*, 98 F.R.D. 442, 445 (D.Del.1982) (state with most significant relationship controls privilege issues); *Mitsui v. Puerto Rico Water Resources Authority*, 79 F.R.D. 72, 78 (D.P.R.1978) (place of communication is major factor in determining which state has strongest relationship with communication); *Danklef v. Wilmington Medical Center*, 429 A.2d 509, 512 (Del.Super.1981) (state with strongest relation to communication controls privilege issue); *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, 59 Ill.Dec. 666, 432 N.E.2d 250, 252 (1982) (place of damage has the most significant relationship under § 139).

In finding that California was the state with the most significant relationship with these communications, the Magistrate noted that defendant Walsh resides and works in California, and that McClatchy newspapers are printed, and, for the most part, distributed there. Because the reporter's privilege is held by the reporter, the Magistrate found Walsh's residence and McClatchy's place of business of special significance. Furthermore, the Magistrate's review of Walsh's deposition reveals that "some, if not many, of Mr. Walsh's confidential sources were California residents." Order, at 17. Finally, the Magistrate noted that all of the information which Walsh assembled from his confidential sources was used in the state of California to develop these articles. As the order states, "... it appears that to a large extent the objected to publications were investigated, written, and editorially processed in California. *Whatever endeavor was carried on elsewhere*, the results were used in California." Order, at pg. 18 (emphasis supplied). Thus, the Magistrate concluded that California has the most significant relationship with these communications.

It is precisely the "endeavor carried on elsewhere" that is crucial under § 139.

Initially, as comment (e) illustrates, § 139 directs the court to locate the place where the confidential communications took place, or where they were centered. *Id.* Therefore, the fact that Walsh and McClatchy Newspapers are located in California is relevant only insofar as it may have been the place where the communications took place or the place where the relationships were centered. Similarly, the fact that the reporter is the actual holder of the privilege is also largely irrelevant.

That the results of the confidential informants' interviews were used in California in the preparation of articles is also irrelevant. Restatement § 139 focuses clearly on the place of the communication and the place where the relationship was centered. That the information was compiled and used in California is of no moment when, as appears in this case, the actual communications may have taken place in Nevada.

The Magistrate did not find that the communications occurred in California. Nor could she have. The record simply does not disclose that the communications took place in California. There is, in fact, almost no evidence indicating where these discussions did take place. Although Walsh apparently used the telephone to contact some sources from California, the record does not show where the sources were at the time of the calls, nor does it disclose who initiated them. The Magistrate did find that the articles were "investigated" primarily in California, but this is not equivalent to finding that the communications occurred there. Without such specific information, it is impossible for the Court to find that the communications occurred in California.

Additionally, from this Court's review of Walsh's deposition, it appears that a significant number of these sources were actually located in Nevada, and not in California, as the Magistrate's order suggests. Review of that deposition indicates that some IRS agents, FBI agents, Gaming Control Board officials, and former Ormsby House employees, all of which were located in Nevada, were used as confidential sources

for the articles in this case. The Court cannot thus say that "many" of the confidential sources were California residents. This tends to indicate that the communications were not "centered" in California.

From the foregoing, it seems that Nevada could well be the place of communication of many of the confidential statements. Additionally, Nevada could be the state in which the communications are centered, in that a substantial number of the informants appear to have been Nevada residents when the communications took place. The record on exactly where the communications took place, and exactly where the confidential relationships were centered is simply not complete enough for the Court to judge which state has the most significant relationship with these confidential communications. When the evidence before the Court is such that it is impossible to reach a conclusion regarding a choice of law matter, the Court normally presumes that the forum's law should apply. *See Cavic v. Grand Bahama Development Co., Ltd.*, 701 F.2d 879, 882 (11th Cir.1983); *Restatement (Second) of Conflicts*, § 136, comment (h) (1971) (where no information, or insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law); *cf. Commercial Ins. Co. of Newark v. Pacific Peru Construction*, 558 F.2d 948, 952 (9th Cir.1977). Because the record in this case is insufficient to judge which state has the most significant relationship with these communications, the parties have failed in their burden of proof, and the Court will fall back onto the law of the forum. *Cambridge Filter Co., supra*, at pg. 449, at 1305. This, of course, leads to Nevada law.

In that the Court has found Nevada law to be the applicable law under all possible conflicts tests, it is unnecessary to decide whether the application of California law would contravene an important Nevada policy interest. In addition, because Nevada law appears to prevent the disclosure of these confidential sources, the Court need

not discuss the possible privilege under the first amendment.

## NEVADA'S REPORTER PRIVILEGE

Nevada's reporter's privilege, located at NRS § 49.275, provides that

> [n]o reporter, former reporter or editorial employee of any newspaper, periodical, press association, or employee of any radio or television station may be required to disclose any published or unpublished information obtained or prepared by such person in such person's professional capacity in gathering receiving or processing information for communication to the public, or the source of any information procured or obtained by such person, in any legal proceedings, trial or investigation:
>
> 1. Before any court, grand jury, coroner's inquest, jury or any officer thereof.
>
> 2. Before the legislature or any committee thereof.
>
> 3. Before any department, agency, or commission of the state.
>
> 4. Before any local governing body or committee thereof, or any officer of a local government.

This statute provides extremely strong protection to the reporter's information gathered in the course of preparing news articles and broadcasts. Indeed, of the states that have enacted such reporter's privileges, Nevada's appears to be the strongest. *See Newton v. NBC, supra,* pg. 450, at 529.

 There seems little doubt that the identities of Walsh's sources are protected by this rule. This information was uncovered as a result of Walsh's investigations in the preparation of the allegedly defamatory articles. Because this information was obtained in the course of Walsh's professional capacity in gathering the news, it is privileged under Nevada law. *Id.*

This may seem a harsh result, in that the plaintiff is now forced to prove his case without knowing the identities of the sources from which Walsh drew his information. Without such information, proof

of actual malice could be fairly difficult. The legislature of the state of Nevada, however, has made clear by the enactment of § 49.275 that there is no exception from this privilege in defamation cases. *Newton v. NBC, supra,* pg. 450. In so doing, it has decided that the confidentiality of news sources, and the attendant benefit to the public, is a greater interest than the rights of an individual defamation plaintiff. Whereas constitutional considerations might force an exception to the rule in criminal prosecutions, there is no such constitutional implication in a defamation case. *Id.*

This is not to say, however, that all is bitter for the plaintiff. For if the defendants are allowed to invoke the Nevada reporter's privilege regarding their confidential sources, they must do so absolutely. Therefore, if the defendants choose to prove their defense through witnesses whose identities are protected by this order, the defendants will be deemed to have waived the privilege. If the defendants choose to call the confidential sources as witnesses at trial, the plaintiff will be able to probe in depth as to their identity and credibility on cross-examination. *See Newton v. NBC, supra,* pg. 450, at 532; *Mazzella v. Philadelphia Newspapers, Inc.,* 479 F.Supp. 523, 526 (E.D.N.Y.1979).

In addition, if Walsh is questioned at trial regarding the sources for his articles, he may not respond that the information came from a "reliable or confidential source." Instead, if Walsh chooses to rely on the privilege at trial, he must do so absolutely. His response to such a question would therefore have to be that he relies on his privilege as a reporter under Nevada law, and that he refuses to answer the question on that basis. If the defendants were allowed to base their defense in this case, as they have done, on the reliability of their sources, and yet still be allowed to refuse to disclose what those sources are, the jury would be left without the crucial information it requires to make its decision. *See Brogan v. Passaic Daily News,* 22 N.J. 139, 123 A.2d 473, 480 (1956), *overruled on other grounds, Maressa v.*

*New Jersey Monthly,* 89 N.J. 176, 445 A.2d 376 (1982).[2] The defendants could then give whatever information was favorable to their position, and refuse to disclose any detrimental facts. *Id.* This result would be unjust, as it would allow the defendants to have their cake and eat it too. Therefore, if the defendants choose to rely upon the privilege at trial, they may do so, but they must do so absolutely, in accordance with the directive of this order.

IT IS, THEREFORE, HEREBY OR-DERED that the Magistrate's order regarding the disclosure of confidential sources (docket #566) is *reversed.* The orders regarding the future deposition of defendant Walsh beginning at pg. 40 of that order, identified as 1a, 1b, 1e, 1f, 1h, 1j, 1k, and 1l are *vacated.*

IT IS FURTHER ORDERED that the plaintiff's motion to compel the disclosure of confidential sources (docket #382) is *denied.* The defendants shall not be required to reveal the identities of any confidential sources, except to the extent that they may or may have waived the privilege in accordance with the directives of this order.

IT IS FURTHER ORDERED that the plaintiffs may depose defendant Walsh in accordance with sections 1c, 1d, 1g, and 1i of the Magistrate's order.

IT IS FURTHER ORDERED that the scheduling order contained in the order regarding confidential sources, beginning at pg. 44 of that document, shall remain in full force and effect, except as modified or altered by order of this court.

## ON MOTION TO COMPEL ANSWERS

The plaintiff has moved to compel answers to questions put to the deponent, Rayole Charyn. At her deposition, the deponent was questioned concerning facts purportedly within her knowledge. She responded that she could not recollect the facts, and would not be able to do so without referring to her notes and reports. When asked to refresh her memory with the notes and reports, the defendants' counsel indicated that they were not present at the deposition because the deponent was not ordered to bring them.

The plaintiff now seeks an order from this Court, ordering the deponent to bring with her to yet another deposition such documents as may refresh her memory. The defendants oppose this motion, on the basis that the Court's initial order allowing the deposition of Charyn to go forward did not require her to produce or review any documents, that the Magistrate has previously ordered that a deponent may not be required to review a deposition transcript before his own deposition, and that a party may not be required to refresh recollection with privileged documents. The Court will treat these objections *seriatim.*

### Previous Order

That the Court did not specifically order Charyn to bring with her any documents to this deposition seems of little relevance. The plaintiff probably does exaggerate the import of the Court's previous order when he suggests that the order requires Charyn to bring documents with her. The Court did command deponent Yablonsky to do so but that order did not direct Charyn to bring documents with her. This fact, however, does not prevent the Court now from ordering Charyn from bringing documents to the deposition.

The defendants further argue that it is now untimely to request such a production of documents, as the request could have been made along with the Yablonsky production request. It appears that the plain-

---

**2.** *Maressa, supra,* pg. 452, 445 A.2d at 386, only overrules *Brogan* to the extent that a reporter does not waive the privilege by asserting the affirmative defenses of truth, fair comment, good faith, honest belief and lack of malice. *Id.* This is not contended here. What survives from *Brogan* is the idea that the reporter cannot indicate to the jury that he has confidential sources, and then refuse to allow cross-examination into the identity and nature of those sources. By requiring the absolute assertion of the privilege, the Court will allow the reporter to maintain the integrity of his sources, but will prevent him from using the privilege as a sword as well as a shield.

tiff was not aware of the necessity of this new production until the deposition continued, however, as it was only at that time that the deponent indicated that she could not remember various facts and that she could refresh her memory by looking at her records. Because the necessity of refreshing the deponent's memory was not apparent until the second deposition, this motion is not untimely.

*Magistrate's Previous Order*

In her previous order regarding the deposition of C.K. McClatchy, the Magistrate found that the deponent could not be forced to read the deposition of another party to the suit before answering questions at his own deposition. The defendants would interpret this order as to preclude Charyn from reviewing her own notes and records before continuing her deposition. The distinction between the two situations is glaring.

In reviewing the deposition of another party to the suit, C.K. McClatchy probably could not have refreshed his memory about information within his knowledge. He would only have discovered what another person knew or did not know. Such information is of marginal relevance to the issues in this case. In contrast, deponent Charyn will be reviewing her own notes and records so as to refresh her own memory about facts which she herself discovered in her investigations. This is a proper use of her records. Fed.R.Evid. 612.

*Work Product Objection*

The defendants further contend that all of the relevant documents are privileged and that Charyn should not be forced to refresh her recollection from them. If she does refresh with those documents, the defendants contend, then she will have waived any privilege currently shielding them. By so doing, the plaintiff would then be able to discover the documents under Fed.R.Evid. 612, which provides for such discovery once a document has been used to refresh.

■ Certainly the deponent is not entitled to refuse to refresh her recollection simply because the documents which she would use are privileged. As this Court has noted before, the simple fact that data are contained within privileged documents cannot prevent their disclosure. The privileged document itself may be jealously shielded. The factual information contained therein must be open to vigorous discovery. Supra at 449. It appears, however, that the defendants' argument centers around the possibility that disclosure might be compelled under Fed.R.Evid. 612.

The defendants' position is not without merit. Rule 612 provides that

> if a witness uses a writing to refresh his memory for the purpose of testifying, either—
>> (1) while testifying, or
>> (2) before testifying, if the court in its discretion determines it is necessary in the interest of justice,
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness.

Various cases have held that even privileged documents become subject to discovery under 612 when they are used to refresh recollection. *United States v. 22.-80 Acres of Land,* 107 F.R.D. 20, 25 (N.D. Cal.1985); *S & A Painting Co., Inc. v. O.W.B. Corp.,* 103 F.R.D. 407, 409 (W.D. Pa.1984); *Wheeling Pittsburgh Steel v. Underwriters Laboratories, Inc.,* 81 F.R.D. 8, 10 (N.D.Ill.1978). It thus seems that the general rule requires the waiver of privilege when the document is used to refresh recollection.

Rule 612(2) does provide, however, that when documents are used to refresh before trial, as in a deposition, disclosure of the remainder of the document is only allowed in the discretion of the court and as the interest of justice requires. In this case, it seems that the interest of justice militates against the disclosure of the documents which the deponent will use to refresh her recollection. The Court is ordering Charyn

to bring the documents with her and refresh her memory as necessary. In contrast, all of the cases cited above involved the *voluntary* use of privileged documents to refresh. Justice requires a different result where the deponent is compelled to use such a document to refresh. Finding that Charyn had waived the work-product privilege by complying with this order would be tantamount to ordering a waiver of the privilege. This, of course, is beyond the power of the Court, except in the most unusual of cases. Thus, by complying with the order of this Court that she refresh her recollection with such privileged documents as necessary, the deponent will not waive the work product or attorney client privileges.

IT IS, THEREFORE, HEREBY ORDERED that the deposition of Rayole Charyn shall recommence within ten days of this order.

IT IS FURTHER ORDERED that the deponent shall take to the deposition her documents, notes, and reports which she has in her possession, or which are now in the possession of the defendants, which will refresh her recollection on the matters relevant to this action.

IT IS FURTHER ORDERED that the plaintiff shall not be allowed to inspect, discover, or otherwise gain access to the documents which the deponent uses to refresh her recollection, if any type of privilege is asserted over them by the deponent or the defendants.

IT IS FURTHER ORDERED that the plaintiff's motion for sanctions is DENIED.