UNITED STATES of America, Plaintiff,

v.

DENTSPLY INTERNATIONAL, INC., Defendant.

Henry Schein, Inc., Movant.

No. Civ.A. 99–5 MMS.

United States District Court,
D. Delaware.

June 11, 1999.

Carl Schnee, United States Attorney, and Judith M. Kinney, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware, of counsel: Mark J. Botti, Michael S. Spector, Michael D. Farber, United States Department of Justice, Antitrust Division, Washington, D.C., for plaintiff.

James P. Hughes, Jr., of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, of counsel: Margaret M. Zwisler, and Richard A. Ripley, of Howrey & Simon, Washington, D.C., for defendant.

John E. James, and W. Harding Drane, of Potter Anderson & Corroon LLP, Wilmington, Delaware, of counsel: Martha E. Gifford, and Heather Martinez, of Proskauer Rose LLP, New York City, for movant Henry Schein, Inc.

## OPINION

SCHWARTZ, Senior District Judge.

The United States Department of Justice ("Justice" or the "Government") has filed an antitrust action against Dentsply International, Inc. ("Dentsply") after a three-year investigation of Dentsply's business practices. That investigation included interviews of 184 witnesses and Civil Investigative Demands ("CIDs") on numerous companies, thereby allowing Justice to obtain confidential and proprietary information. Two matters, both of which stem from Justice's three-year investigation, are presently before the Court.

First, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Dentsply has filed a motion to compel the Government to answer an interrogatory seeking facts learned by the Government during its witness interviews in the course of its investigation of Dentsply.[1]

Second, pursuant to Federal Rule of Civil Procedure 26(c), the Government and Henry Schein, Inc. ("Schein"), a third-party respondent to a CID, have each filed a motion for a protective order. Schein both competes with and distributes for Dentsply, depending on the particular line of Dentsply's dental product. Schein has moved to intervene solely to urge the Court to adopt a protective order with provisions protecting it and other third-parties who have responded to the CIDs. Dentsply, the Government and Schein all agree, in principle, that a protective order is necessary to protect proprietary information but disagree on its scope and content. Both the Government's and Schein's motions request, among other things, a protective order provision denying Brian Addison, Dentsply's General Counsel, access to third-party confidential information obtained pursuant to the CIDs. Schein also seeks a provision in the protective order restraining outside counsel's representation of Dentsply for a defined future period.

For reasons which follow the Court will grant Dentsply's motion to compel as well as Schein's motion to intervene. The Government's and Schein's motions for protective orders will also be granted with respect to shielding third-party proprietary information from Dentsply's general counsel subject to a safety valve which would allow Addison to see the information in what would have to be very unusual circumstances. The Court will deny Schein's motion to the extent it seeks to limit Dentsply's outside counsel's representation of Dentsply. Finally, the Court will make several rulings regarding its role in the proposed protective orders.

### I. *Motion to Compel*

Dentsply's motion to compel arises because of the Government's refusal to answer the following interrogatory:

With regard to the 184 individuals and entities who were interviewed by the DOJ pursuant to its CID investigation of Dentsply and subsequently identified in Plaintiff's Rule 26(a)(1) Initial Disclosures, please identify in detail all facts known to these individuals and entities that are relevant to the DOJ's claims against Dentsply in this matter.

The Government contends that because the three-year Dentsply investigation, including issuance of the CIDs, was initiated and supervised by Department of Justice attorneys in anticipation of litigation, all facts learned during that investigation constitute work product.

■ Indeed, the "work product doctrine" protects from disclosure, *inter alia*, the legal strategies and mental impressions of an attorney formed in anticipation of or preparation for litigation. *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *see also* 6 *Moore's Federal Practice* § 26.70[2][c] (3d ed. 1998) ("Courts have continued to apply *Hickman* to prevent parties from circumventing the work product doctrine by attempting to elicit an attorney's thought process through depositions or interrogatories.") Despite its protestations to the contrary, the Government is attempting here to extend work product protection to the facts which form the basis of its antitrust lawsuit. Justice is clearly not required to turn over its attorneys' memoranda resulting from the interviews, and Dentsply does not contend otherwise since this type of information involves the mental impressions protected by the work product doctrine. Rather, Dentsply seeks only the facts that form the basis of the lawsuit—the interrogatory does not require the Government to supply its counsel's view of the case, identify the facts which counsel considered significant or reveal the specific questions asked by the Government attorneys.

■ The general rule is that one party may discover relevant facts known or avail-

---

1. While two document requests were also the subjects of the motion to compel, at oral argument counsel for Dentsply withdrew as moot its motion to compel production of the documents at issue in those requests.

able to the other party, even though such facts are contained in documents that are not discoverable. *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 595 (3d Cir.1984) ("Of course, where the same document contains both facts and legal theories of the attorney, the adversary party is entitled to discovery of the facts. It would represent a retreat from the philosophy underlying the Federal Rules of Civil Procedure if a party could shield facts from disclosure by the expedient of combining them or interlacing them with core work product."); *Farran v. Johnston Equip., Inc.,* Civ.A. No. 93–6148, 1995 WL 549005, at *3 (E.D.Pa. Sept. 12, 1995) ("The work product doctrine furnishes no shield against discovery by interrogatories or by depositions of the facts that the adverse party has learned of the persons from whom such facts were learned."); *Eoppolo v. National R.R. Passenger Corp.,* 108 F.R.D. 292, 294 (E.D.Pa. 1985); *In re Dayco Corp. Derivative Sec. Litig.,* 99 F.R.D. 616, 624 (S.D.Ohio 1983) (ordering plaintiff to answer defendants' interrogatory because "[d]efendants may discover the facts upon which Plaintiffs, and/or their counsel, base their allegations"); Fed. R.Civ.P. 26(b)(3) advisory committee's note to 1970 amendments; 9 Charles Alan Wright et al., *Federal Practice and Procedure* § 2023, at 330 (2d ed. 1994) ("[T]he work product concept furnishe[s] no shield against discovery, by interrogatories ... of the facts that the adverse party's lawyer has learned"); 6 *Moore's Federal Practice* § 26.70[2][a] (stating that work product doctrine does not protect facts contained within work product). Counsel or litigants cannot use the work product doctrine to hide facts underlying the litigation from discovery. *Hickman,* 329 U.S. at 507, 67 S.Ct. 385 ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."); *Musko v. McCandless,* Civ.A. No. 94–3938, 1995 WL 580275, at *1 n. 2 (E.D.Pa. Sept. 29, 1995) ("Facts that attorneys witness or discover through their investigative efforts, as opposed to the *impressions and conclusions*

drawn from them, are not protected by the work product doctrine."); *In re Convergent Technologies Second Half 1984 Sec. Litig.,* 122 F.R.D. 555, 558 (N.D.Cal.1988) ("[C]ounsel can learn those facts ... by posing interrogatories to [opposing] counsel that would compel disclosure of the substance of relevant information [opposing] counsel has learned from non-party witnesses."); *Laxalt v. McClatchy,* 116 F.R.D. 438, 442 (D.Nev. 1987) (holding that party must reveal all relevant facts in the case regardless of whether the facts were discovered in an investigation in anticipation of litigation).

The weakness of the Government's position is perhaps best exposed by its necessary concession at oral argument that at some point before trial it would have to reveal the facts upon which it would rely to prove its case against Dentsply. But, if facts developed during the three-year investigation were truly work product, the facts sought by Dentsply would never have to be disclosed.[2] The Government, therefore, under the guise of the work product doctrine, seeks to manipulate the timing of the revelation of facts it has gathered and upon which it intends to rely to suit its purposes. This was never the intent of the work product doctrine, and the Court declines the Government's invitation to extend the scope of that doctrine.

■ The Government also asserts its position is supported by Federal Rule of Civil Procedure 26(b)(3) which provides in pertinent part:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has

---

2. While an attorney's mental impressions or legal strategies might become apparent to opposing

counsel in the course of discovery or trial, the attorney does not have to disclose them.

been made, the court shall protect against disclosures of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The Government, seizing upon the language "the court shall protect against disclosures of mental impressions, conclusions, opinions, or legal theories of an attorney" insists the Dentsply interrogatory is designed to obtain disclosures prohibited by Rule 26(b)(3). That argument, however, is misplaced because Rule 26(b)(3) does not serve as a basis for a refusal to respond to discovery requests seeking the disclosure of facts by deposition or interrogatories. By its plain language, Rule 23(b)(3) applies only to the production of documents and tangible things. *Eoppolo*, 108 F.R.D. at 294.

The Government's position is against the overwhelming weight of authority. Therefore, the Government will be required to answer the interrogatory.

## II. *Motion to Intervene*

■ Schein has moved to intervene solely for a protective order guarding confidential business information. The Government served CIDs on several companies that Schein has since acquired. In response to the CIDs, those companies produced material and information, some of which was confidential—sales and marketing plans, strategic plans, financial forecasts, margin information, customer information, pricing information, and information concerning distribution agreements with vendors other than the defendant Dentsply. Dentsply has served a request for documents on the Government, seeking disclosure of the material containing this confidential information. Further, Dentsply acknowledges that "it appears likely that during the course of this litigation, the parties will take [additional] third party discovery of Schein."

In response to the CID, Schein has provided "sales and marketing plans, strategic plans, financial forecasts and margin information, customer information, pricing infor-

mation and information concerning Zahn's distribution and other agreements with manufacturers[,][and] amounts spent on particular product areas, plans for expansion into particular markets, and deals struck with other manufacturers."[3] Affidavit of Norman Weinstock ["Weinstock Aff."], Docket Item ("D.I.") 22, ¶ 12. According to Schein, allowing Dentsply access to the materials would give Dentsply competitive advantage in multiple ways which were spelled out explicitly and with great detail in the affidavit. Weinstock Aff., D.I. 22, ¶¶ 14–18.[4]

■ Understandably motivated by a desire to protect its confidential information, Schein seeks to share its views on the provisions of any protective order governing this litigation. Rule 24(b) of the Federal Rules of Civil Procedure governs intervention. The Rule provides in part:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

However, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir.1994), teaches that the Court should relax the requirement of a common question of law or fact when the intervenors are not seeking to become parties to the litigation. "There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order." *Id.* (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir.1992)).

■ Thus, intervention is appropriate "to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." *Pansy*, 23 F.3d at 778 (citations omitted). As of this date, no protective or confidentiality order has been entered because the parties were unable to agree upon one. Schein will be permitted to intervene for purposes of bringing to the Court's attention its view

---

3. Zahn Dental, Inc. was acquired by Schein in 1995 and continues to operate as a division of Schein. Weinstock Aff., D.I. 22, ¶ 3.

4. *See also infra* note 6.

with respect to what should be contained in the protective order.

### III. *Motions for Protective Order*

Both Schein and the Government move for a protective order. Under Rule 26(c)(7) of the Federal Rules of Civil Procedure, a court may, upon a showing of good cause, issue an order protecting a trade secret or other confidential research, development, or commercial information from disclosure. *Smith v. BIC Corp.*, 869 F.2d 194, 199 (3d Cir.1989); *C.A. Muer Corp. v. Big River Fish Co.*, Nos. Civ.A. 97–5402, 97–6073, 97–7154, 1998 WL 488007, at *2 (E.D.Pa. Aug. 10, 1998). The court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Fed.R.Civ.P. 26(c)(7).

 A prerequisite to the issuance of a protective order governing discovery is a showing of "good cause." Fed.R.Civ.P. 26(c); *Pansy*, 23 F.3d at 786; 6 *Moore's Federal Practice* § 26.105[8][a]. Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order. *Pansy*, 23 F.3d at 786. The litigant seeking the protective order must articulate the injury with specificity. *Id.; Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir.1984). "Broad allegations of harm, unsubstantiated by specific examples," do not support a showing of good case. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986). The burden of justifying a protective order remains on the litigant seeking the order. *Id.* In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for the information. *Pansy*, 23 F.3d at 787; 6 *Moore's Federal Practice* § 26.105[8][a]. The court has wide discretion in determining the scope

of a protective order.[5] *Pansy*, 23 F.3d at 787.

The litigants agree that at least some of the information acquired pursuant to the CIDs or to be gathered in the future should be protected by a protective order. Indeed, the parties are in substantial agreement with respect to the majority of the content of a protective order. Because the parties have already reached such a degree of agreement, the Court will only rule on three issues on which the parties could not agree along with a fourth concern raised by the Court *sua sponte*. They may then draft a proposed protective order incorporating the decisions explained in this Opinion and the accompanying Order. While the differences in the parties' positions are narrow, they are nonetheless significant. The parties disagree in three areas: 1) the standard governing when confidential status is conferred; 2) whether Brian Addison, General Counsel for Dentsply, may have access to confidential information; and 3) whether the Court should restrict outside counsel's future representation of Dentsply. In addition, the Court raises *sua sponte* the issue of whether the numerous proposed provisions for Court resolution of confidentiality designation and use at trial are manageable.

### A. Standard Governing Whether Documents Are To Be Designated Confidential

 The proposed protective orders vary, in the first instance, in the standard upon which the "confidential" designation is based. In their proposed protective orders, Justice and Schein both agree that "confidential information" means "any trade secret or other confidential research, development, or commercial information, as such terms are used in Fed.R.Civ.P. 26(c)(7) ... the disclosure, or further disclosure, of which would result in a clearly defined and serious injury." D.I. 19, Exh. A; D.I. 31, Exh. A. Dentsply, on the other hand, has proposed a protective order defining as "confidential" "information of a type contemplated by Rule

---

5. The most common kind of protective order is an order limiting the persons who have access to the information disclosed and the purpose for which these persons may use the information. 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2043 at 566 (2d ed.1994); see 6 *Moore's Federal Practice* § 26.105[8][b].

26(c)(7) of the Federal Rules of Civil Procedure, and which has not been made public and which a provider regards as proprietary financial information, or other confidential business or technical information." The real point of difference, then, is whether confidential information should be defined as information the disclosure of which would result in a clearly defined and serious injury or whether the "confidential" designation should be based on the information provider's regard for the information as proprietary or confidential.

While Dentsply has proposed an arguably more inclusive standard for confidentiality, under Rule 26(c) of the Federal Rules of Civil Procedure, the Court may only grant a protective order where there is "good cause shown." Fed.R.Civ.P. 26(c); *Smith v. BIC Corp.*, 869 F.2d at 199. It follows the standard for confidentiality must be drawn such that Schein and Justice can show "good cause" for protecting every document which falls within the ambit of that standard. As already rehearsed, the Third Circuit Court of Appeals has explained that "[g]ood cause is established on a showing that disclosure will work a clearly defined and serious injury...." *Pansy*, 23 F.3d at 786 (quoting *Publicker*, 733 F.2d at 1071). In the Third Circuit, the appropriate standard for the "confidential information" designation in a protective order is information, the disclosure, or further disclosure, of which will work a "clearly defined and serious injury." [6]

## B. Access To Confidential Information By General Counsel of Dentsply

■ Schein and Justice seek a protective order provision prohibiting Brian Addison, Vice President, Secretary and General Counsel of Dentsply, from access to documents designated confidential. Dentsply urges that Addison should have access to all information disclosed or produced, even if it is correctly designated as confidential—that is so sensitive its disclosure or further disclosure would work a "clearly defined and serious injury."

Disclosure to employees of Dentsply generally of a nonparty competitors' sales and marketing plans, financial forecasts, margin, pricing, cost and customer information, etc., would obviously constitute a clearly defined and serious injury to all nonparties. The issue is whether the Government and Schein have carried their burden that access to confidential information by Dentsply's General Counsel, Addison, would also constitute a disclosure which would work a "clearly defined and serious injury."

The Government, Schein and Dentsply uniformly agree that the law and standard applied in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed.Cir.1984), should control. In that case, the Federal Circuit Court of Appeals first held "that status as in house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *Id.* at 1469. It then instructed that a district court must examine the particular counsel's relationship and activities to determine an appropriate protective order. *Id.* at 1468. The Federal Circuit Court of Appeals concluded that prohibiting disclosure of confidential information to in-house counsel may be appropriate when in-house counsel is involved in "competitive decision making"—activities in which counsel participates and advises "in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1468 & n. 3. This Court has similarly stated that the critical inquiry is whether in-house counsel is in-

**6.** Schein has already demonstrated the potential for such injury should Dentsply have access to some of the information at issue. For example, Schein notes access to Schein's strategies, sales plans, pricing and other sensitive information would, *inter alia*, allow Dentsply to anticipate Schein's marketing plans in the areas in which they compete and would give Dentsply an unfair advantage in negotiating contracts in areas where Schein distributes for Dentsply. Weinstock Aff. D.I. 22, ¶¶ 14–18. Similarly, providing customer information including customer contacts and customer lists to Dentsply could allow Dentsply to take clients away from Schein or allow Dentsply to go directly to Schein customers to obtain comprehensive margin information to the detriment of Schein in its negotiations with Dentsply. *Id.* at ¶ 17. Finally, in the artificial tooth area, access by Dentsply to confidential sales and marketing plans, customer lists and financial information would allow Dentsply to interfere with Schein's operations. *Id.* at ¶ 18.

volved in competitive decision making such that the attorney "would have a difficult time compartmentalizing his knowledge." *Motorola, Inc. v. Interdigital Technology Corp.,* Civ.A. No. 93–488–LON, 1994 U.S. Dist. LEXIS 207A, at *10 (D.Del. Dec. 19, 1994) (citations omitted).

Typically, the "competitive decision making" standard for determining access to confidential competitive information has been applied to party-litigants. Counsel have not cited any case in which the "competitive decision making" standard has been applied, where, as here, proprietary information is that of a nonparty produced under governmental compulsion. The Court is concerned about applying the competitive decision making standard to confidential information to hapless nonparties. While some nonparties may rejoice in the Justice Department's antitrust investigation, others doubtless consider the risk inherent in sharing extremely sensitive information too high a price to pay for curing the alleged unlawful anticompetitive activity. These nonparties have produced or will produce information because they are law-abiding entities with severely limited options. Their information will be shared not because they are a litigant seeking redress or an accused wrongdoer defending a lawsuit, but because they have valuable information which may or may not shed light on whether Dentsply has engaged in proscribed anticompetitive activity. Because the litigants have agreed to the "competitive decision making" standard, the Court accepts the standard as applicable to nonparties only for purposes of the instant motions. The Court follows this course because it has not had the benefit of adversary briefing. However, in making its "good cause" determination, the Court will factor the nonparty status of Dentsply's competitors and distributors whose confidential information is at issue in balancing the risk of injury that might result without the protective order against Addison's need for the information.[7]

Dentsply argues its general counsel is not involved in competitive decision making. Dentsply offers the affidavit of Addison, stating he does not provide business advice or participate in Dentsply's nonlegal matters. D.I. 34, Ex. 1, at ¶ 4. According to the affidavit, Addison has no involvement with the development of Dentsply's marketing or distribution strategies or in the formulation of Dentsply's pricing and rebate plans, other than to review such matters for legal compliance. *Id.*

Dentsply further urges it will be prejudiced if Addison cannot have access to confidential information. It maintains that barring access to any confidential information is unfair because Dentsply relies on its general counsel to direct the litigation, devise legal strategy, and provide assistance to outside counsel. *See* D.I. 34, Ex. 1, Addison Aff. at ¶ 8; *see also Carpenter Tech. Corp. v. Armco, Inc.,* 132 F.R.D. 24, 28 (E.D.Pa. 1990) (allowing in-house counsel access to confidential information because "[g]iven the technical nature of this case, the advice of in-house counsel with specialized knowledge of the steel industry could be essential to the proper handling of this litigation by outside counsel"); *Boehringer Ingelheim Pharmaceuticals, Inc. v. Hercon Laboratories Corporation,* Civ.A. No. 89–484–CMW, 1990 WL 160666, at *2 (D.Del. Oct. 12, 1990) (allowing in-house counsel already involved in the case to receive confidential information because the members of the in-house counsel staff could avoid conflicting work in the future and in-house counsel were responsible for major decisions concerning the instant litigation). Further, Dentsply's in-house counsel has been supervising the litigation from the beginning of the plaintiff's CID investigation approximately four years ago. D.I. 34, Ex. 1, Addison Aff. at ¶ 8.

In answer, Schein and the Government point to several factors counseling against

---

**7.** The risk of injury to the owner of confidential information is presumably greater where the owner was never in a position to accept or reject the risk of disclosure of confidential information. Indeed, when a private plaintiff decides to bring a lawsuit, or when a private defendant develops strategy for defending a lawsuit, they accept the inherent risk that they will be required to disclose confidential information and may be injured by that disclosure. A nonparty, on the other hand, is in precisely the opposite situation; the nonparty has never undertaken the risks of disclosure.

Addison having access to this confidential information. Both assert that Addison, as an officer of Dentsply, could base future business decisions on information learned during discovery. Both Schein and the Government also assert giving Addison access to the confidential information increases the risk of its inadvertent disclosure. In addition, Justice argues that allowing defendant's in-house counsel to have access to the confidential information is likely to impede discovery in this and other litigation because nonparties may be less willing to cooperate.

Additionally, Schein and Justice argue that Addison is, in fact, involved in business decisions. In making this assertion, they rely on the affidavits of Norman Weinstock, formerly a regional sales manager for Dentsply and now President of the Zahn Dental, Inc. Division of Schein, D.I. 22, Weinstock Aff., of Vern E. Hale, a Senior Vice President of Vident, a distributor of teeth manufactured by Dentsply competitor Vita Zahnfabrik, D.I. 49, Hale Aff., and of Monte M.F. Cooper, engaged as counsel for Vident with respect to matters involved in this litigation, D.I. 49, Cooper Aff. While, as developed below, the Weinstock and Hale affidavits are not particularly useful for clarifying these facts, the Cooper affidavit pinpoints an important deficiency in the Addison affidavit.

One need look no further than the carefully crafted Addison affidavit to conclude that the Government and Schein have carried their burden of demonstrating that the risk of injury which might result to third parties outweighs Addison's need for the information. Indeed, that affidavit demonstrates the reality of a situation in which Addison has a very real involvement in competitive decision making.

After asserting he does not participate in nonlegal operating business matters of Dentsply, D.I. 34, Exh. 1,[8] Addison goes on to state:

5. The one area where my responsibilities may be viewed as crossing over into the competitive, business environment is the area of Dentsply's acquisitions of other commercial entities or entering of contractual transactions. For certain of these transactions, I have become involved in shaping the operational structure of the newly acquired enterprise; however, I do not get involved in marketing and sales strategies or decisions. Other than the instances described above, I have no involvement in Dentsply's competitive decision-making.

D.I. 34, Exh. 1, ¶ 5. Addison is thus involved in: (1) Dentsply's acquisition of companies; and (2) entering into contractual transactions. If Addison had access to information regarding a competitor's (i) marginal cost of production, (ii) long-term and short-term financial forecasts, (iii) strategic plans, and/or (iv) alliances with distributors and suppliers, he could make use of this information to augment Dentsply's efforts in making or implementing strategic acquisitions. This is particularly troublesome since Dentsply's efforts could be turned on acquiring a nonparty which has produced confidential information. This alone would be enough to tip the balance in favor of nondisclosure to Addison. However, there is more.

Addison also states he is involved in entering contractual transactions. The affidavit is ambiguous as to whether these contractual transactions relate only to acquisitions or to contractual transactions independent of any acquisition. Either possibility entails an unacceptably high risk of either utilization or inadvertent disclosure of confidential information to the severe detriment of nonparties.[9]

---

8. Paragraph 4 of the Addison affidavit reads:

4. As General Counsel, I do not participate in the non-legal operating business matters of the company, nor provide non-legal advice concerning competitive business issues. Nor do I have any such involvement in any other capacity that I serve at Dentsply. To be specific, other than providing review for legal compliance, I have no involvement in the development or formulation of pricing and rebate plans, the creation of marketing or distribution policies, or in the shaping of any sales strategies for any of Dentsply's divisions.
D.I. 34, Exh. 1.

9. For example, a declaration filed on behalf of a competitor recites:

... Presumably, the 'contractual transactions' referenced by ... Addison include Dentsply's entering into agreements with dental laboratory dealers and other customers for the distribution and sale of Dentsply products

Weighing the interests of the Government and Schein against that of Dentsply dictates that the balance favors the Government and Schein. Accordingly, the protective order shall not provide for disclosure of confidential information to Addison, General Counsel for Dentsply.

Some factual matrix may evolve which would require that Addison have access to the specified detailed confidential information to allow Dentsply to defend itself. The protective order shall therefore include a provision providing for disclosure to Addison upon the making of a pre-defined requisite showing. At a minimum that requisite showing should include: 1) extraordinary detailing of the circumstances warranting disclosure; 2) an explanation of why employment of any and all filtering devices would not suffice; and 3) an explanation of why reliance on the representations and opinions of outside counsel would not be adequate. In addition, the provision will allow for notice and right to be heard by the affected nonparty and resolution by the Court. The above minimum mandatory conditions erect a very high barrier to Addison ever seeing the confidential information, but at the same time provide a safeguard against the unknown.

## IV. *Outside Counsel's Future Representation of Dentsply*

█ A provision in Schein's proposed protective order provides:

... outside counsel have not been, are not, and for the earlier of four (4) years from the date of this order or two (2) years from the conclusion of trial in this action, will not be, without prior approval of the Court, involved in any other matters on behalf of defendant relating to its competitors, distributors, or customers, with the exception of matters related to this action;

...

(including premium artificial teeth). Such agreements may contain a variety of provisions, including indemnity agreements, production requirements, and similar sections which are negotiated without full knowledge by parties like Dentsply of the profit margins of its competitors ..., or of the volumes of sales of products offered by its competitors....
D.I. 49, Decl. of Cooper, ¶ 6.

D.I. 19, Exh. A, at 7. In its Reply Memorandum, Schein narrowed the wide scope of its proposed limitation to apply only "[i]f the law firm is now or may be in the future advising Dentsply on non-litigation legal issues involving distribution, pricing or similar matters...." D.I. 41 at 11. In that event, "Henry Schein's proposed order reasonably requires the firm to select lawyers other than this trial team for that work for a period of time." *Id.* Schein has also made clear it does not seek to preclude Dentsply's outside law firm from future representation of Dentsply. Rather, it seeks in the proposed order a provision that "reasonably requires the firm (Howery & Simon) to select lawyers other than this trial team." *Id.*[10]

Schein cannot demonstrate "good cause" for the proposed draconian measures because it has not shown it would be injured unless the Court limited outside counsel's relationship to Dentsply. *See Pansy,* 23 F.3d at 786 ("'Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning,' do not support a good cause showing." (quoting *Cipollone,* 785 F.2d at 1121)). Schein only speculates that Dentsply's outside counsel may advise Dentsply on business matters, including those involving Dentsply's competitors and distributors, while Dentsply unequivocally states that its outside counsel does not advise Dentsply on competitive business decisions, a position which Schein accepts in its reply brief. *See* D.I. 41 at 10. The Court concludes the proposed restrictions on outside counsel shall not be contained in the protective order.

## V. *Protective Order Provisions Which Might Tax Court Resources*

█ The Court raises *sua sponte* a concern arising out of similar provisions found in the various proposed protective orders. The

10. The Government's proposed protective order does not contain a restriction on outside counsel similar to that requested by Schein. At best the Justice position may be characterized as giving the concept lukewarm support presumably because "Henry Schein's proposal might force a choice on Dentsply to replace counsel on this matter or on some other pending matters." D.I. 32 at 17.

Government and Schein have essentially three parallel provisions: first, the Court shall resolve any dispute as to whether information is properly classified as confidential;[11] second, a party must give a set of number of days notice to a nonparty before disclosure of its confidential information to prospective trial witnesses and, should the nonparty object, the party litigant must file a motion demonstrating good cause why the disclosure should be granted despite the objection, with the Court determining the motion;[12] and third, the Court is to resolve disputes between a party and nonparty over the former's desire to disclose the latter's proprietary information to experts and consultants.[13] In addition to the above projected Court involvement in confidentiality disputes, Dentsply would confer on a nonparty the right to file at any time for a separate protective order as to a particular document or information, including restrictions on use differing from those in any protective order adopted by the Court.[14] Finally, Dentsply

11. Dentsply proposes a similar provision.

12. Although there are differences in language and time periods between the Government's and Schein's motion, the concept is the same. For illustrative purposes there is set out the pertinent provisions from the Government's proposed protective order:

> 10. Except as otherwise authorized by this Order, information designated as confidential shall be used only in connection with this action, shall not be disclosed to any person other than the individuals set forth below, may be disclosed only as necessary in connection with this action to the individuals set forth below, and may be used by those individuals only as necessary in connection with this action:
> . . .
> (g) subject to the provisions of Paragraph 13, other persons not included in the above Subparagraphs who testify, or who, trial counsel believes in good faith, may testify, at trial of this action, solely to disclose to them confidential materials relating to matters about which trial counsel believes in good faith they are likely to testify at trial of this action.
> . . .
> 13. Before disclosure of confidential information is made to any person or persons specified in Subparagraph 10(g), the party wishing to make such a disclosure shall give notice in writing, via facsimile or hand delivery, at least five (5) business days before such disclosure, to the producing party or protected person, stating the names, addresses, and employers of the person(s) to whom the disclosure will be made. The notice shall identify with particularity the documents or specific parts thereof to be disclosed and the substance of the information to be disclosed. If, within the five-business-day period, an objection is made regarding the proposed disclosure, disclosure of the confidential information shall not be made unless the party seeking to make such disclosure obtains permission to do so by motion to the Court. The Court will deny the motion and access to the documents or confidential information, unless the party seeking to make such disclosure shows good cause why the proposed

disclosure should be permitted despite the objection.
D.I. 31, Exh. A, ¶¶ 10 and 13.

13. Illustrative is paragraph 15 of the Government's proposed protective order:

> 15. If a party wishes to disclose confidential information, pursuant to paragraph 10(d), to an expert or consultant employed or affiliated with defendant or with any of its competitors, the executed agreement included as Appendix A hereto shall be transmitted, no later than ten (10) days prior to the disclosure of the confidential information, to the other party and, if applicable, to counsel for the protected person that had designated the information as confidential, along with a curriculum vita or resume of the person to whom the disclosure is to be made. If the party or protected person receiving such notice believes that disclosure of confidential information that it has produced to such person would result in a clearly defined and serious injury, it may object in writing within five (5) days of receipt of the executed agreement included as Appendix A hereto. If the party wishing to disclose information and the party or protected person receiving such notice cannot resolve their dispute, the party wishing to disclose confidential information may apply to the Court for an Order permitting disclosure of confidential information to such person. No disclosure of confidential information may be made by a party to any such person with respect to whom the objection has been made unless so ordered by the Court.
> D.I. 31, Exh. A, ¶ 15.

14. Paragraph 10 of Dentsply's proposed protective order provides:

> 10. This Protective Order shall be without prejudice to the right (a) of the parties to bring before the Court at any time (subject to, unless impractical, the procedural requirements of paragraph 7) the question of whether any particular document or information constitutes Confidential Information hereunder or whether its use should be so restricted or (b) of a Producing Party to present a motion to the Court under Fed.R.Civ.P. 26(c) for a separate

would have the Court countenance unlimited successive applications for modification of any protective order it adopts.

These myriad provisions calling for the Court refereeing confidentiality disputes have enormous potential for overwhelming scarce judicial resources. This nationwide antitrust action was filed after a three-year investigation involving over one hundred eighty witnesses and a staggering number of documents with an unknown percentage to be designated as confidential. Severe logistical problems could arise if an unknown number of nonparties had conferred upon them the right to obtain court rulings protecting their proprietary information. The only person available to handle this potential onslaught is one district judge [15] who, not surprisingly, has other cases on his docket.

While the Federal Rules of Civil Procedure obligate a judge to handle legitimate discovery disputes, the Federal Rules do not require a judge to process disagreements between party litigants, much less nonparty differences arising from lawyer crafted protective orders.

Judges sign off on protective orders obligingly, both as a convenience to party litigants and to assure administrative control of a case. Given the daunting potential for disputes built into the proffered protective orders, the Court has no alternative but to require the parties to include in their protective order a "back-up" private-sector mechanism, paid for by the parties, to issue binding resolution of confidentiality classification disputes if the Court, because of the press of other judicial business, cannot entertain the disputes.

While ¶ 10 of the Government's proposed order providing for disclosure of confidential information to prospective witnesses is satisfactory, ¶ 13, which requires the parties to move the Court for permission upon objection by a nonparty to release of the information, is not.[16] Inclusion of ¶ 13 carries with it the very real possibility of interrupting the orderly flow of what might be a lengthy trial. Indeed, the proposed procedure would not allow the Court to make the decision with the benefit of the appropriate background context developed during the taking of evidence so that the requisite balancing of the competing interest can be done in an informed manner. In addition, it carries with it conferral of limited party status, upon nonparties, without benefit of intervention under Rule 24 of the Federal Rules of Civil Procedure. This is impermissible.[17]

The Court recognizes disallowance of ¶ 13 carries with it some limited potential for abusive disclosure of confidential information. The Court is confident the Government and Dentsply's outside counsel will not allow this to happen. Moreover, the Government has demonstrated its intent to zealously protect the confidentiality of third-party proprietary information as evidenced by its strong opposition to disclosing confidential information to Addison. Finally, to the extent the Government's burden in inducing voluntary cooperation from nonparties is increased by reason of the deletion of the highly unusual ¶ 13, it is a condition with which it will have to live.

Notwithstanding the Court's rejection of ¶ 13 or any similar protective order provisions, the Court is not unmindful of the concerns of nonparties. Prudent use of a filtering mechanism can go a long way in protecting third parties when their confidential information is shown to witnesses. If an objection is made to showing a witness unfil-

---

protective order as to any particular document or information, including restrictions differing from those specified herein. This Protective Order shall not be deemed to prejudice the parties of Producing Parties in any way in any future application for its modification.
D.I. 34, Tab 2, ¶ 10.

**15.** Magistrate Judge Thynge is totally occupied conducting extremely valuable alternative dispute resolution for all of the judges in this district. Mediating and settling cases for all nature of people (and entities) are arguably more impor-

tant than presiding over classification and other disputes arising out of any protective order that is entered.

**16.** To the extent ¶ 15 contains similar provisions for the parties to move the Court for permission to disclose confidential information to experts or consultants upon objection by a nonparty it is unsatisfactory for the same reasons.

**17.** At trial yet another interest is implicated, the interest of the public flowing from the First Amendment.

tered confidential information, counsel should be prepared to demonstrate that showing the witness the unfiltered information is essential to the proponent's case. The Court will honor such an objection if a filtering mechanism is or was available and not employed.

 There is left only Dentsply's provisions which would permit unlimited successive applications for modification of the protective order which will govern this case. It is rejected out of hand for obvious reasons.

The parties have advised they were in substantial agreement with respect to other provisions in the competing protective orders. Hopefully this Opinion and accompanying Order will enable the Government and Dentsply to submit a proposed protective order agreed to as to form, if not in substance.

## VI. *Conclusion*

In conclusion, therefore, the Court will order the Government to answer Interrogatory No. 1 and will grant Schein's motion to intervene for the limited purpose of presenting its views on a protective order to protect its confidential information. The Court also makes the following rulings regarding the proposed protective orders to allow the parties to complete their preparation of a protective order to govern this case for submission to the Court: 1) confidential information shall be defined as information of the type described in Rule 26(c)(7) of the Federal Rules of Evidence, the disclosure, or further disclosure, of which would result in clearly defined and serious injury; 2) Addison may not, as a general rule, have access to documents designated confidential; 3) any protective order shall contain a "safety valve" which allows Addison access to confidential documents upon the showing described above; 4) the protective order may not purport to limit outside counsel's ability to represent Dentsply; and 5) the parties shall draft the protective order in light of the Court's rulings pertaining to its resources.

An appropriate order will issue.