**BEAR REPUBLIC BREWING CO., Plaintiff,**

v.

**CENTRAL CITY BREWING CO., Defendant.**

**Civil Action No. 10–10118–RBC.[1]**

United States District Court, D. Massachusetts.

May 12, 2011.

Zachary N. Coseglia, Bruce E. Falby, Paul S. Ham, Deborah E. McCrimmon, DLA Pip-

1. The parties have consented to jurisdiction by the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

er U.S. LLP, Boston, MA, Eugene M. Pak, Wendel Rosen Black & Dean, LLP, Oakland, CA, for Bear Republic Brewing Co. (Counter Defendant).

Julia Huston, Foley Hoag LLP, Anthony E. Rufo, Boston, MA, for Central City Brewing Co. (Counter Claimant).

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO QUASH SUBPOENAS TO JAMES B. STAPLES AND JBS PROFESSIONAL SERVICE, LLC (# 56)

COLLINGS, United States Magistrate Judge.

#### I. Introduction

On January 26, 2010, plaintiff Bear Republic Brewing Co. ("Bear Republic") filed a five-count complaint (# 1) against defendant Central City Brewing Co. ("Central City"). In Count I Bear Republic alleges a trademark and trade dress infringement claim in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114; in Count II, a trademark and trade dress infringement and false designation of origin claim in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); in Count III, a common law claim for unfair competition; in Count VI, a state law trademark and trade dress infringement in violation of Massachusetts common law and Mass. Gen. L. c. 110H, § 13; and in Count V, a claim for unfair and deceptive acts and practices in violation of Mass. Gen. L. c. 93A. Central City filed an answer to the complaint on March 19, 2010. (# 13)

On April 7, 2010, Bear Republic filed a motion for preliminary injunction (# 18). After full briefing and oral argument the Court denied the motion. *Bear Republic Brewing Co. v. Central City Brewing Co.*, 716 F.Supp.2d 134 (D.Mass., 2010). Thereafter, discovery commenced.

#### II. The Discovery Dispute

The present dispute arose toward the end of the discovery period. After various extensions, the Court, on August 9, 2010, set December 30, 2010 as the date for initiating any non-expert discovery and January 31, 2011 as the date for concluding non-expert discovery.

On January 21, 2011, Central City served Defendant Central City Brewing Company's Amended Initial Disclosures (# 58–2) in which it notified Bear Republic that James B. Staples is an "... individual[ ] likely to have discoverable information." (# 58, Exh. 2 at 1) The disclosure went on to state that:

> Mr. Staples has knowledge of the retail sales and restaurant sales conditions of Central City's RED RACER beer in Massachusetts, the retail sales conditions of Bear Republic's RACER 5 and RED ROCKET beers in Massachusetts, and certain photographs and documents reflecting same.

(# 58, Exh. 2 at 2)

Also, in late January or early February, counsel for Central City produced documents to counsel for Bear Republic

> ... which included several photographs taken by Staples, several cuts of video footage taken by him, as well as a restaurant menu accompanied by various advertisements from the same establishment obtained by him and a bottle of beer obtained at his instruction.

(# 58 at 2) Further, copies of those documents have been submitted to the Court. (# 58, Exh. 1)

On the basis of these disclosures, counsel for Bear Republic sought discovery from Mr. Staples, issuing the four subpoenas, two deposition subpoenas and two subpoenas *duces tecum*, to Mr. Staples and his company. Those four subpoenas are the subject of the motion to quash.

On February 7, 2011, Julia Huston, Esquire, counsel for Central City, sent an e-mail to counsel for Bear Republic stating that "[w]e have determined that James B. Staples is not in fact a person who is likely to have discoverable information in this case, and Central City does not plan to call him as a witness at trial. . . . [and that] [i]n these circumstances, we assume you will withdraw the subpoenas ..." (# 58, Exh. 6 at 2) On the same date, Central City sent counsel for Bear Republic a "Second Amended Initial Disclosure" which deleted the listing of James B. Staples as an "individual[ ] likely to

have discoverable information." (# 58, Exh. 6 at 3–6) [2]

Counsel for Bear Republic did not withdraw the subpoenas and stated his intention to go forward. (# 58, Exh. 8 at 2–3) In response, counsel for Central City took the position that Mr. Staples was hired by Central City's attorneys in order to work at their direction and "... has no responsive information that does not constitute work product." (# 58, Exh. 8 at 2) Counsel for Bear Republic did not agree, and counsel for Central City filed its motion to quash on February 14, 2011. The motion raises a number of discrete issues.

### III. Timeliness and Service of Process

■ The first two can be dealt with summarily. Central City claims that the subpoenas should be quashed because they are untimely having been served after the close of discovery. The Court rejects this argument since it was only ten days before the close of discovery that Mr. Staples and his role in the case were disclosed. In such circumstances, the Court would relax the deadline so that discovery could be taken since it was represented that Mr. Staples might have discoverable information.

Similarly, the Court is not concerned with any issue with respect to service of the subpoenas. If it is determined that Bear Republic is entitled to take discovery from Mr. Staples, any problems with service can be resolved.

### IV. Discovery of Facts Learned as a Result of Investigation

■ The next issue is whether Bear Republic is entitled to discover the facts which were learned by the investigator during the course of his investigation. The answer is manifestly in the affirmative. In the case of *Laxalt v. McClatchy*, 116 F.R.D. 438 (D.Nev.,

1987), the Court dealt with an attempt to depose two investigators hired by defendants and held that:

> [B]oth deponents must answer questions which seek to discover all relevant facts in the case, regardless of whether those facts were discovered in their roles as defendants' investigators, or before those employment relationships were created.

*Laxalt*, 116 F.R.D. at 442–43 (citing *Eoppolo v. National Railroad Passenger Corp.*, 108 F.R.D. 292 (E.D.Pa., 1985) (and further collecting cases). *See also United States v. Dentsply International, Inc.*, 187 F.R.D. 152, 155–56 (D.Del., 1999)). However, the Court noted that "... there is a possibility that a discussion of factual matters may reveal counsel's tactical or strategic thoughts." *Id.* at 443 (citing *Powell v. United States Dept. of Justice*, 584 F.Supp. 1508, 1520 (N.D.Cal., 1984)). "The work product privilege protects intangible work product as well as what Fed. R.Civ.P. 26(b)(3) calls 'documents and tangible things'." *Nesse, etc. v. Pittman*, 202 F.R.D. 344, 356 (D.D.C., 2001) (citing *Alexander v. FBI*, 192 F.R.D. 12, 17 (D.D.C., 2000); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 200, 209 (D.D.C., 1998); *Laxalt*, 116 F.R.D. at 441; *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 691 (E.D.Pa., 1986)). As a result, at a deposition of an investigator, counsel must "... carefully tailor his questions in the deposition, so as to elicit specific factual material, and avoid broad based inquiries, ... which could lead to the disclosure of trial strategies." *Laxalt*, 116 F.R.D. at 443 (citing *Powell*, 584 F.Supp. at 1520).

To be clear, the Court rules that what is discoverable are the **facts** Mr. Staples learned during the course of his investigation. Unless there has been a waiver of the work-product protection, *see infra*, as noted, Rule 26(b)(3)(A), Fed.R.Civ.P., protects from

---

**2.** Counsel for Central City attempts to categorize what was done in the instant case as the same as when a party designates an expert as a "testifying" expert and then later re-designates that expert as a "non-testifying expert." In such situations, it has been held that the opposing party is not permitted to take discovery from the "non-testifying" expert despite the fact that he or she was once designated as a "testifying" expert. *Estate of Douglas L. Manship, et al. v. United*

*States of America*, 240 F.R.D. 229, 234–39 (M.D.La., 2006) (collecting cases). This law is inapposite for the simple reason that Mr. Staples is not an expert witness and never has been designated as an expert witness. Disclosure from experts is specifically dealt with separately and comprehensively in Rule 26(b)(4), Fed. R.Civ.P. There is no basis for applying that body of law to non-experts such as Mr. Staples.

disclosure "... documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party ...". And it is clear that Mr. Staples' work was for a "party", Central City, and was done "in anticipation of litigation or for trial." Thus, any reports Mr. Staples prepared for Central City's counsel would not be discoverable (absent waiver), but the *facts* recited in the reports would be. For these reasons, the Court will not quash the subpoena to Mr. Staples to the extent that Bear Republic seeks testimony respecting the facts which he uncovered during the course of his investigation.

### V. The Question of Waiver of the Work–Product Protection

■ This brings us to the question as to whether there has been a waiver of the work-product protection, and if so, the extent of the waiver. It is to be recalled that counsel for Central City produced to counsel for Bear Republic

> ... several photographs taken by Staples, several cuts of video footage taken by him, as well as a restaurant menu accompanied by various advertisements from the same establishment obtained by him and a bottle of beer obtained at his instruction.

(# 58 at 2) [3]

It is manifest that these items come within the category of "documents and tangible things" and that they were intentionally disclosed to counsel for Bear Republic. Absent waiver, they are protected by Rule 26(b)(3), Fed.R.Civ.P., as "work product." Prior to 2008, there was law to the effect that disclosure of some work product materials operated as a waiver only as to the materials actually disclosed and did not extend to other non-disclosed materials on the same subject matter. For instance, in the case of *Pittman*

*v. Frazer*, 129 F.3d 983, 988 (8 Cir., 1997), the Court quoted Wright & Miller as follows:

> If documents otherwise protected by the work-product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently by able to claim protection for the documents as work product. *But disclosure of some documents does not destroy workproduct (sic) protection for other documents of the same character.*

*Pittman*, 129 F.3d at 988 (quoting 8 C. Wright and A. Miller, *Federal Practice and Procedure*, § 2024 at 209 (1994) (emphasis added) (other citations omitted)).

However, the enactment of Rule 502, Fed. R.Evid., altered this law.[4] By its terms, Rule 502 "... appl[ies], in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work-product protection" and provides, in pertinent part:

> **(a) Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver.**—When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

(Pub.L.110–322, § 1(a), Sept. 19, 2008, 122 Stat. 3537.)

■ In the instant case, Central City has made a disclosure of "information covered by

---

3. As noted, copies are in the record. *See # 58*, Exh. 1 at 2–19.

4. In view of this prior law, one wonders why there was any need to deal with the work-product doctrine (as opposed to attorney-client privilege as to which the law was different) at all in Rule 502(a). Be that as it may, the enactment on Rule 502(a) may be the reason that the quotation from Wright & Miller in the *Pittman* case as it

appears in the present volume of the treatise is the same except that the word "necessarily" is added to the second sentence and it now reads:

> But disclosure of some documents does not necessarily destroy work-product protection for other documents of the same character. 8 Wright & A. Miller, *Federal Practice and Procedure*, § 2024 at 530 (2010) (emphasis added).

... work-product protection" in a "Federal proceeding," i.e., the instant case. Was the disclosure "intentional" (as opposed to "inadvertent")? There can be no doubt that it was, and counsel for Central City does not contend otherwise. The Rule provides that the "waiver" rather than the disclosure has to be intentional to meet the provision of subdivision (a) of the Rule. This means that a party must intend to waive the privilege or protection in order for there to be a waiver of undisclosed information pursuant to Rule 502(a).

The history as to how this provision came to be added is of interest. The initial draft of the proposed Rule 502 which was sent out for comment did not include a requirement in section (a) that the waiver be intentional. The draft read:

> (A) **Scope of waiver.**—In federal proceedings, the waiver by disclosure of an attorney-client privilege or work product protection extends to an undisclosed communication or information concerning the same subject matter only if that undisclosed communication or information ought in fairness to be considered with the disclosed communication or information.

> 23 Wright & Graham, *Federal Practice and Procedure*, § 5441 at 853 (Supp.2011) (quoting proposed Rule 502); http://federal evidence.com/pdf/2007/WebPDFs/ ERCommAGENDAMaterialsApr07.pdf, at 29–32.

The requirement that the "waiver" be "intentional" (rather than that the "disclosure" be "intentional") was added to the draft at the Advisory Committee's April, 2007 meeting to ensure that there would be no subject-matter waiver unless the party knew that the disclosure would operate as a waiver. The minutes read as follows:

> The first suggestion was that the text should be changed to clarify that a subject matter waiver can never be found unless the waiver is intentional. The purpose behind this change would be to make it clear that an inadvertent disclosure of

privileged information during discovery would never lead to the drastic consequences of a subject matter waiver. In response to this suggestion, one Committee member posited that there may not need to be a need for protection against subject matter waiver for mistaken disclosures, because the provision on inadvertent disclosure (Rule 502(b)) would grant protection against any finding of waiver so long as the producing party acted with reasonable care and took prompt and reasonable steps to get the mistakenly disclosed information returned. But other members noted that protection against subject matter waiver was necessary even with the protections provided by Rule 502(b)—otherwise parties will be likely to increase the costs of preproduction privilege review in order to avoid even the remote possibility of a drastic subject matter waiver.

> Committee members also considered whether the language on intentionality should refer to the intent to disclose the information or to the intent to waive the privilege. After discussion, the Committee determined that subject matter waiver should not be found unless it could be shown that the party specifically intended to waive the privilege by disclosing the protected information. The Committee voted unanimously to amend proposed Rule 502(a) to provide that subject matter waiver could only be found if 'the waiver is intentional.'

Advisory Committee on Evidence Rules, Minutes of Meeting of April 12–13, 2007, at 8; http://www.uscourts.gov/uscourts/RulesAnd Policies/rules/ Minutes/EV04–2007–min.pdf, at 8.

There really can be no question in the instant case that counsel for Central City knew that what was being disclosed was protected by the work product doctrine and that Central City was waiving the protection as to the specific items disclosed. Thus, the distinction between an intentional "waiver" as opposed to an intentional "disclosure" is not material in the instant case.[5]

---

5. Nevertheless, I tend to agree with the Committee member who indicated that there was no

need to require that the "waiver" be intentional, i.e., that the producing party knew that produc-

This would seem to end the discussion in the instant case as to subpart (a)(1) but for some discussion in the Advisory Committee Notes with respect to this Rule which indicates that something more than "intentional" was contemplated. Specifically, the Advisory Committee notes with respect to subpart (a)(1) read as follows:

> **Subdivision (a).** The rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. *See, e.g., In re United Mine Workers of America Employee Benefit Plans Litig.,* 159 F.R.D. 307, 312 (D.D.C.1994) (waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage).

Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner. It follows that an inadvertent disclosure of protected information can never result in a subject matter waiver.

Fed.R.Evid. 502, Advisory Committee Notes, rev. 11/28/2007. These Notes seem to provide that for there to be a waiver of more than what was disclosed, the disclosure and waiver must be not only "intentional" but also be made ". . . in a selective, misleading and unfair manner." Manifestly, this additional "requirement" is not found in the rule which only states that the waiver must be "intentional." In the instant case, while it is clear that the disclosure and waiver were intentional, there is no basis for finding that the disclosure was made in a "selective, misleading and unfair manner." [6]

■ Of course, ". . . [t]he Advisory Committee Note is not the law, the rule is." *United States v. Carey,* 120 F.3d 509, 512 (4 Cir., 1997), *cert. denied,* 522 U.S. 1120, 118 S.Ct. 1062, 140 L.Ed.2d 122 (1998). *See also*

---

tion would waive the privilege or protection for the reason that if the "disclosure" is not intentional, then it would be inadvertent, a subject covered by Rule 502(b). As Rule 502 stands now, there is a new category of situations which are not covered by subdivision (a) or (b), i.e., those situations in which a "disclosure" is intentional but the person or entity disclosing the information did not know or intend that the disclosure would operate as a waiver. What standards do we apply for disclosures in this new category? In addition, as one commentator has pointed out, applying this provision in the corporate or organizational content creates significant problems. 23 Wright & Graham, *Federal Practice and Procedure,* § 5441 at 856 (Supp.2011).

6. There is some evidence that the Advisory Committee Notes, in stating that the Rule 502(a) applies only when the disclosure be made in a "selective, misleading and unfair manner" is referring to subdivision (3) rather than subdivision (1) i.e., that the disclosed and undisclosed information ". . . ought in fairness to be considered together". Thus, the Advisory Committee in a Report to the Standing Committee dated May 15, 2007 wrote that ". . . [a] subject matter waiver should be found only when privilege or work product has already been disclosed, and a further disclosure 'ought in fairness' to be required in order to protect against a misrepresentation that might arise from the previous disclosure". Report from Advisory Committee to Standing Com-

mittee, May 15, 2007, p. 3; http://federal evidence.com/pdf/2007/WebPDFs/ERComm–ACRRept–05–07.pdf. The undersigned never thought the phrase "ought in fairness to be considered with the disclosed communication or information" was speaking to the disclosing party's purpose in or manner of disclosing the communication or information but rather to the issue of the scope of the waiver, i.e., should the waiver apply to the whole subject matter or just that portion of the subject matter which "in fairness" should be considered with what has been disclosed. *See The Commonwealth of Massachusetts v. Mylan, Inc.,* 2010 WL 2545607, *1 (D.Mass., June 21, 2010). There will always be a "misrepresentation" by a partial disclosure in the sense that less than a complete picture has been disclosed, and that will be true whether the disclosure was made in a "selective, misleading and unfair manner" or not. If "misrepresentation" means more than that, how is a Court going to make a finding as to the issue since neither the Court nor the party asserting that there has been a waiver (who has the burden of proving waiver) will know what has not been disclosed? It is best to leave the "in fairness" analysis to the scope of the subject-matter waiver, not to whether there has been one in the first place as a result of an "intentional" disclosure and "waiver" of privileged or protected material.

*In Re Sealed Case,* 141 F.3d 337, 343 (D.C.Cir., 1998) (citing Carey); *United States v. Poland,* 533 F.Supp.2d 199, 211 (D.Me., 2008)(citing Carey), *aff'd on other grounds,* 562 F.3d 35 (1 Cir., 2009). It would follow from this body of law that all that is required is that the disclosure be "intentional" as provided in Rule 502(a)(1) and that the additional requirement as set forth in the Advisory Committee Notes that the disclosure be made in a "selective, misleading and unfair manner" is not controlling.

In addition to the Advisory Committee Notes, there is a "Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence" which can best be described as a piece of legislative history. In its "Statement", Congress made two assertions which could be interpreted as indicating that something more than an "intentional" disclosure was necessary to effectuate a waiver of other non-disclosed information on the same subject matter. First, Congress stated that it was dealing with "... when a party's **strategic** use in litigation of otherwise privileged information obliges that party to waive the privilege regarding other information concerning the same subject matter so that the information being used can be fairly considered in context." Statement of Congressional Intent, 154 Cong. Rec. H7818–7819, Sept. 8, 2008, 2008 WL 4133109; 23 Wright & Graham, *Federal Practice and Procedure,* § 5438 at 849–851 (Supp.2011) (quoting statement in full) (emphasis supplied). Second, it stated that in situation under subdivision (a)(1), "... the party using an attorney-client communication **to its advantage** in the litigation has, in so doing, intentionally waived the privilege as to other communications concerning the same subject matter, regardless of the circumstances in which the communication being so used was initially disclosed." *Id.* (emphasis supplied).[7] Nevertheless, the situation with this "legislative history" is the same as with the Advisory Committee Notes, i.e., the plain unambiguous wording of the Rule is what the law despite what is stated in either the Advisory Committee Notes or the legislative history.

Further, there is no problem if the Rule makes a "substantive" change in the law. Rule 502 was passed by Congress directly rather than coming into effect as an end result of the procedure set forth in the Rules Enabling Act, 28 U.S.C. § 2072 *et seq.,* and so is not subject to the limitation contained in that Act that the rule "... shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). *See Poland,* 562 F.3d at 40 ("... [T]he statute brings into play both an enduring conundrum—the line between substance and procedure—and the puzzle of the statute's reference to 'rights.'") (footnote omitted).

Applying this analysis, there has been a waiver of "undisclosed ... information [which] concern[s] the same subject matter." The issue then becomes what is the "same subject matter?" Beyond that, once the "same subject matter" is identified, the third requirement contained in Rule 502(a)(3), Fed. R.Evid., comes into play, i.e., "how much of the subject matter must be disclosed 'in fairness?' In other words, once the subject matter as been defined, how much information within that category must be disclosed because 'in fairness,' it should be 'considered' along with what has been disclosed?" *The Commonwealth of Massachusetts v. Mylan, Inc.,* 2010 WL 2545607, *1 (D.Mass., June 21, 2010).

In my judgment, the "subject matter" is "... several photographs taken by Staples, several cuts of video footage taken by him, as well as a restaurant menu accompanied by various advertisements from the same establishment obtained by him and a bottle of beer obtained at his instruction." (# 58 at 2) Further, in my judgment what "in fairness" should be "considered" along with what has been disclosed is all the circumstances involved with respect to this material, including how it came to be obtained, at whose direction it was obtained, and the manner in which it was obtained. This would also in-

---

7. The use of the word "strategic" and the phrase "to its advantage" may not add anything to the analysis. Certainly, a decision to disclose any material is to some extent "strategic" and one would infer that a party would not knowingly waive the work-product protection by disclosing it to an opposing party unless it thought that to do so was "to its advantage."

clude any other documents concerning the taking of the photographs and videos and the procurement of the restaurant menu as well as any written or oral communications between Mr. Staples and counsel for Central City with respect to the photographs, videos and menu. The Court rules that the waiver goes just this far and no further.

So the Court will allow the motion to quash in part and otherwise deny it. In accordance with Part V of the within Memorandum and Order, counsel for Bear Republic may take Mr. Staples' deposition as to any facts which he learned as a result of his own investigation or any investigation conducted at his direction. This category is not limited to the photographs, video clips and menu which were disclosed. The Court would permit the deposition as to facts even if there had been no waiver by the disclosure of the pictures, video clips and menu. In accordance with Part V of the within Memorandum and Order, counsel for Bear Republic may take Mr. Staples' deposition as to all the circumstances involved in the taking of the photographs, video clips and menu to the extent set forth in Part V, *supra.*

### VI. Order

The subpoenas are QUASHED to the extent that they seek more than the Court has herein permitted. The motion to quash is DENIED to the extent that the subpoenas seek discovery from Mr. Staples which has herein been permitted. Counsel shall confer with the purpose of reaching agreement as to the time and place of Mr. Staples' deposition and as to any issues with respect to service of process.

IT IS SO ORDERED.